## HARRISON v. BARKER ANNUITY FUND.
## UNITED STATES v. SAME.
### Nos. 6046, 6047.

Circuit Court of Appeals, Seventh Circuit.
May 25, 1937.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and John E. Garvey, Sp. Assts. to Atty. Gen., and Michael L. Igoe, U. S. Atty., of Chicago, Ill., for appellants.

Silas H. Strawn, Frederick C. Hack, Edward G. Ince, and Robert McDougal, Jr., all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The question raised by these two appeals is whether judgments awarding to appellee a refund of income and capital stock taxes assessed for the years 1929, 1930, 1931, and 1932 should be reversed. The District Court held appellee, incorporated and operated for charitable purposes, exempt from tax.

■ Appellee is a corporation organized for nonpecuniary purposes under the statutes of Illinois. The application for its charter recited that the object for which the applicant was to be incorporated was "to accept, hold, administer, invest and disburse such funds as may from time to time be given to it by any person, persons, or corporation for charitable, religious or educational purposes and especially to accept, hold, administer, invest and disburse a fund about to be given to it for such pur-

poses by Catherine Barker Spaulding in memory of her parents, * * * to receive real and personal property" for the purposes mentioned and "to hold, use, sell, invest and reinvest the same and collect and disburse the income and principal thereof for such purposes in accordance with the directions of the donor or in the absence of such directions in the discretion of the directors." Upon issuance of the charter, the corporation became bound by these provisions.

For the years in question the greater portion of the income from property held by such corporation was paid to organizations clearly charitable in character, including American National Red Cross, Illinois Humane Society, Home for Destitute Crippled Children, Family Welfare Association, Chicago Home for Convalescent Women and Children, National Child Welfare Association, and many similar institutions. A smaller portion was used to pay pensions to aged employees of the Haskell & Barker Car Company, a former manufacturer of railroad cars, in which the father of Catherine Barker Spaulding, the principal donor of the funds, had had a very substantial interest.

In 1919 the Pullman Company acquired the stock of the Haskell & Barker Car Company and thereafter that company ceased to exist. The Pullman Company had a pension plan for its employees but ruled that no employee of the Haskell & Barker Company could be given credit under the Pullman pension plan for the years he was employed by the Haskell & Barker Company, prior to the time when the assets of the company were taken over by the Pullman Company. Some five years later appellee was organized.

During the years in question a portion of the income of appellee was paid as "annuities to certain former employees of Haskell & Barker Car Company, * * * only to men or the widows of such men married before November 1, 1924, who on January 1, 1916 were fifty years of age or over, were at the last named date in the service of said Haskell & Barker Company and had been in such service for fifteen or more consecutive years." The payments were $30 per month to unmarried men and widows, and $45 per month to married men or to men or widows supporting a child not able to work. Each annuity was to begin when the recipient had

"reached the age of seventy years or become incapacitated for work."

The donor no longer had any interest in the formerly existing Haskell & Barker Company. She was related in no way to the beneficiaries; knew none or few of them, and was inspired, obviously, by a desire to reward the faithful employees of a company which had ceased to exist, who had proved their loyalty by extended years of service and had attained certain ages, irrespective of poverty or indigence. By subsequent provision, upon the death of the last annuitant, all the remaining property of appellee was directed to be transferred and conveyed to the Barker Welfare Foundation, a clearly exempt charitable corporation.

Appellant contends that appellee is not organized exclusively for charitable, religious, educational or other exempt purposes, within the purview of the applicable statute; that, under the charter, the donor may divert the funds to other than charitable purposes and, upon dissolution, distribute the assets to the donor or donors; that the donations made to appellee for distribution under its charter are not irrevocably dedicated to exempt purposes; that appellee is not operated exclusively for religious, charitable, educational, or other exempt purposes as contemplated by the federal exemption statutes; and that judgment should have gone for appellant.

The statute, section 103 of the Internal Revenue Act of 1928 (26 U.S.C.A. § 103 and note), provides that corporations or foundations organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals shall be exempt from taxation. Under this law, in view of the fact that bequests for public purposes operate in aid of good government and perform by private means what ultimately would fall upon the public, exemption from taxation is not so much a matter of grace or favor as rather an act of public justice. The reason for the rule of narrow scrutiny of a statute does not apply to such cases. Union & New Haven Trust Co. v. Eaton (D.C.) 20 F.(2d) 419. Accordingly the courts quite generally have extended liberal construction to statutes furthering the encouragement of bequests for purposes which tend toward the public good, without reference to personal or selfish motives. Thus, in Mutual Aid & Benefit Association v. Commissioner (C.C.A.) 42 F.(2d) 619, where a manufacturer of textiles organized a nonprofit corporation for the purpose of carrying on welfare work amongst its employees and to pay medical, dental, sick, and death benefits, it was held that the association was exempt, even though the existence and operation of such a corporation constituted a direct benefit to the manufacturing corporation. In Bok v. McCaughn, 42 F.(2d) 616 (C.C.A.3), Bok transferred certain securities to trustees in perpetuity, the income from which was to be used in awards to citizens rendering conspicuous service to the community. The court held that the trust was an exempt association within the meaning of the act, remarking that making an award to a citizen who renders conspicuous service in any field is one method of holding up that particular activity as an object of honorable effort and tends to encourage the many to follow in the train of the one thus conspicuously honored and that it was the purpose of Congress to encourage men and women to follow the examples of those whose well doing has been of benefit to the world. Similar reasoning appears in Duffy v. Pitney, 2 F.(2d) 230 (C.C.A.3); Eagan v. Commissioner, 43 F.(2d) 881, 71 A.L.R. 863 (C.C.A.5); Gimbel v. Commissioner, 54 F.(2d) 780 (C.C.A.3); Sibley v. Commissioner, 16 B.T.A. 915; Y. M. C. A. Retirement Fund, Inc., v. Commissioner, 18 B.T.A. 139.

In the present cases neither the appellee nor the donor was a beneficiary or interested either directly or indirectly in the dissolved company. The persons to whom annuities were paid were those who had remained loyal in the service of the retired company and who had proved their steadfastness of character by long years of service. Elements taken into consideration were years of service, age, marital status and the offspring of the persons to whom annuities should be paid, and at the time annuitants became the recipients they must have reached the ordinarily allotted span of life in order to receive in their old age their rewards for fidelity, steadfastness and persistence in industry. For this purpose the donor was inspired to create the fund and to reward them by annuities. The inevitable effect of such action was to encourage, generally, among employers, the desire to promote similar rewards for the qualities mentioned and, among employees, industry, persistence of

effort, and loyalty. Clearly such purposes are charitable as Congress has used the word in the exemption statutes, as the courts have construed the same.

■ Appellant contends that the fund was not organized and operated exclusively for exempt purposes. The character of the corporation and the purpose for which it was organized must be ascertained by reference to the terms of its charter, Hall v. Woods, 325 Ill. 114, 156 N.E. 258, and the right of the corporation to an exemption must be determined likewise by the powers given in its charter. Sun-Herald Corporation v. Duggan, 73 F.(2d) 298 (C.C.A.2). Appellee was organized for "charitable purposes" under statutes which authorize corporations not for pecuniary profit. The sole object of its incorporation was to accept, hold, administer, invest and disburse its funds for charitable, religious or educational purposes. It had no other power and no other authority. Any attempt to divert its income to other than its charter purposes would have been ultra vires. The corporation was organized for one purpose and one only and that special grant of authority from the state conclusively estopped it from exercising any other powers.

Appellant suggests, however, that, so far as the annuities are concerned, the powers of the corporation will expire when the last annuitant dies and that the property may then be devoted to a nonexempt purpose. To our minds the argument is fallacious. But the record does not support the premise, for under the existing contract between the donor and appellee, when the last annuitant has expired, the balance of principal and income, if any, are to be transferred to the Barker Welfare Corporation, an exempt charitable organization.

■ Appellant insists that appellee was not operated exclusively for exempt purposes. But we have observed that many purely charitable organizations were beneficiaries in the fund and that the only question as to exemption of all funds is that urged as to the sums paid out in the form of annuities. And we have seen that the purpose of the latter payments was praiseworthy and the inevitable effect the encouragement and promotion of habits upon the part of employer and employees, tending to the greater good of the whole body politic. The fact that some annuitant may not need the pension is immaterial, just as in one of the cited cases the fact that persons who had performed unusual services and thus would become entitled to rewards might not need the same. There is no taint of personal or selfish motives. The donor gained nothing except to promote a plan of just reward to persons to whom she owed nothing, for virtues worthy of emulation in people generally; to satisfy a desire to see that loyal employees should be rewarded and not live in want or indigent circumstances.

■ It is urged that the fact that it is possible to determine who the annuitants were as a designated class defeats the exemption. Some courts and legal writers have believed that indefiniteness is essential to a public charity. Upon examination of the cases, it is apparent such lack of indefiniteness is one of degree, and in most instances of so designated uncertainty, it was possible to ascertain the definite class. Indeed, it is difficult to conceive how a trust fund can be distributed to an indefinite class; the distributor must always determine the members of the qualified class. In Pease v. Pattison, 32 Ch.Div. 154 the sum was devoted to "those injured and the families of those killed" in a mine disaster. The designation was, in a sense, indefinite. The qualified members of class had to be ascertained before distribution could be made. Here the specific individuals who were entitled to receive the benefits were not known. True, their names could be ascertained by an investigation, but the fact that the necessary investigation might be less arduous than in other cases does not necessarily destroy the exemption. In the language of 2 Bogert, Trusts and Trustees, par. 362, p. 1093: "Lastly, a trust may have as its object the improvement of the condition of a definite group of known individuals in a mental, moral or physical way. Here the cestuis are from the beginning fixed and identifiable and are always to be such. There is to be no addition to the class. For example, a public subscription may be taken for the victims of a certain flood, fire, or tornado. Here the persons who suffered physical injury or lost property as a result of this event may well be easily discoverable. In a short time the trustees of the fund could learn the names and addresses of all the members of the class. The benefits to be conferred are of the type which usually validate charitable trusts; that is, they in-

volve the relief of sickness, injury, and poverty. Shall the fact that these benefits are to go to definite persons make the trust private? It would seem here that each court should decide for itself whether the size of the class to be aided is such that there is a general public interest in the carrying out of the trust, or whether the relief is so limited in amount as to make it solely a matter of the interest of the individual sufferers."

We conclude that the appellee is exempt from the taxes assessed within the meaning of the statute.

The judgments are affirmed.