## UNITED STATES v. PROPRIETORS OF SOCIAL LAW LIBRARY.

### No. 3412.

Circuit Court of Appeals, First Circuit.

March 2, 1939.

Jerome P. Carr, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the United States.

Arthur D. Hill, of Boston, Mass. (Faneuil Adams, Irving M. Pinansky, and Hill, Barlow, Goodale & Wiswall, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the District Court of Massachusetts holding that under Section 101 (6) of the Revenue Act of 1934, 26 U.S.C.A. § 103 (6), the Proprietors of the Social Law Library, an old and well-known institution in Boston, was exempt from any capital stock tax that might be imposed under Sec. 701 of the Revenue Act of 1934, 48 Stat. 680, 769, 26 U.S.C.A. § 1358.

Sec. 701 (a) of the Act of 1934 provides that:

"(a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

\* \* \* \* \* \*

"(c) The taxes imposed by this section shall not apply—

"(1) to any corporation enumerated in section 101 [section 103]."

Sec. 101 (6) of the Act of 1934 under which the Library claims exemption for

the tax imposed under Sec. 701 (a) provides as follows:

"Sec. 101. [§ 103.] *Exemptions from tax on corporations.*

"The following organizations shall be exempt from taxation under this title [chapter]—

*   *   *   *   *   *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

The Social Law Library was incorporated by the Commonwealth of Massachusetts in 1814 by a Special Act of Legislature for the obvious purpose of "creating, enlarging, managing and improving said Library". The facilities of the Library are open to all who become either "Proprietors" or "Subscribers", and free of charge to certain state and federal officials. It has been operating continuously since 1814, and for a long time has been housed in the Suffolk County Court House, free of expense or rent, and from its inception has been supported in part by public funds, viz.: a payment from the County of Suffolk amounting to $1,000 a year. The Library consists of some 93,000 volumes on various legal subjects, including those of a light and non-technical nature.

The District Judge found as facts that the Social Law Library conforms to all the tests set up in the exempting section 101 (6) of the 1934 Act. Its charter provides that all funds received by it from the Commonwealth of Massachusetts, or from dues of the members, or from any other source, shall be used for the purpose of creating, enlarging, managing and improving the Library. It provides access to sources of information and for opportunities for research in problems of law by any citizen becoming a Proprietor or Subscriber, and which any attorney of Boston becoming a Proprietor or Subscriber may use as supplemental to and in conjunction with his own library. That all cases arising in their practice may be subjected to the widest possible examination and study, it is of inestimable benefit to the public. While individually lawyers may receive direct benefits in their business from the acquisition of knowledge contained in the books of the Library, nevertheless the public also receives both a direct and an indirect benefit from the better administration of the law by reason of the knowledge thus obtained. Though the ones who take advantage of its opportunities may be limited to those contributing to its upkeep, or who are granted the free privileges, that is true of any of our colleges and of many other institutions whose membership is of necessity restricted.

It matters not, we think, as to its status as an educational institution that in the main only lawyers seek to become Proprietors and Subscribers and thus qualify as having access to the Library, in addition to those given free use thereof under its charter. Its benefits are open to all citizens of Boston who are willing to aid in its upkeep by allying themselves with it as a Proprietor or Subscriber.

To permit the public to use the Social Law Library indiscriminately would greatly lessen its benefits to those qualified to obtain the greatest benefits from its use, since it must be a place devoted to study. Quiet is essential to serving its purpose. Hence the reason for excluding law students and restricting the users within reasonable limits.

The District Court found that in the true sense it is an educational institution. The District Court having made these findings and rendered judgment after hearing, and considering the evidence and the agreed statement of facts, such findings and judgment must be taken as presumptively correct. Wabash Ry. Co. v. Bridal, 8 Cir., 94 F.2d 117, 121; Colby et al. v. Riggs National Bank, 67 App. D.C. 259, 92 F.2d 183, 197, 114 A.L.R. 1065; Lawson v. United States Mining Co., 207 U.S. 1, 12, 28 S.Ct. 15, 52 L.Ed. 65.

Therefore, it being presumptively established that the Social Law Library is an educational institution within the meaning of Sec. 101 (6), it is exempt from a capital stock tax, under Sec. 701 (a) of the Revenue Act of 1934.

Such a statute should be liberally construed. The reason for the rule of narrow scrutiny of a statute does not apply in such cases. Union & New Haven Trust Co. v. Eaton, D.C., 20 F.2d 419.

As Judge A. N. Hand said in Slocum et al. v. Bowers, D.C., 15 F.2d 400, 403:

"The policy of exempting these corporations is firmly established and has been continuously expanding ever since the system of income taxation was adopted. The statute should be read, if possible, in such a way as to carry out this policy and not to make the result turn on accidental circumstances or legal technicalities."

The term "charitable" is a generic term and includes literary, religious, scientific and educational institutions. As the court said in Missouri Historical Society v. Academy of Science, 94 Mo. 459, 8 S.W. 346, cited in Simmons et al. v. Fidelity National Bank & Trust Co. of Kansas City, 8 Cir., 64 F.2d 602:

"Any gift not inconsistent with existing laws, which is promotive of science, or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for public convenience, is a charity * * *." [94 Mo. 459, 8 S.W. 348.]

Also see to the same effect St. Louis Union Trust Company et al. v. Burnet, 8 Cir., 59 F.2d 922, 927.

Surely a law library of the size and type of the Social Law Library of Boston, serving as it does a large body of lawyers and state and federal officials, measures up to the conditions required of an exempt institution under Sec. 101 (6) supra. Its contents are not strictly confined to law books as authorities on questions of law, but it contains over 8,000 biographical, encyclopedic, and historical works and books dealing with the entertaining aspects of the law. That its users are confined to those interested in legal, governmental or historical subjects and to those contributing to its support does not take away its right to exemption under Sec. 101 (6). This is expressly provided by Regulation 94 of the Treasury Department under Art. 101 (6)–1, and has been generally recognized. In Ettlinger v. Trustees of Randolph-Macon College, 4 Cir., 31 F.2d 869, 871, the court very clearly declared this doctrine:

"And it is equally clear both that the eleemosynary or charitable nature of an educational institution is not destroyed by the fact that it makes a charge for tuition, and that the payment of tuition by its students does not prevent their being considered beneficiaries of the charity."

An art gallery, though open to all, appeals only to a limited class, yet funds contributed to the support of such institutions have always been regarded as charitable contributions. The Commonwealth of Massachusetts held in Minns v. Billings, 183 Mass. 126, 66 N.E. 593, 5 L.R.A.,N.S., 686, 97 Am.St.Rep. 420, that the Boston Athenæum was a charitable institution in that it was educational, although those entitled to use it are in general limited to owners of its shares and their families and to invited guests

The exempt status of a corporation is in general to be determined from its charter, and from its characterization by the state in which it was incorporated. Harrison v. Barker Annuity Fund, 7 Cir., 90 F.2d 286, 289. The Act incorporating the Social Law Library of Boston in effect declared it to be a charitable or educational institution, as its funds are to be expended solely for "creating, enlarging, managing and improving said Library"; and further provides, "to effect the laudable objects contemplated by said corporation," money may be appropriated by the County of Suffolk for the promotion of its purposes, which was done and is being done to this day, indicating its public nature.

There is a further provision indicating the extent to which its benefits are extended, viz.: that of free access to the Library by the leading government officials of the Commonwealth and the judicial officers of the United States. By Chap. 78, Secs. 1–6 of the General Laws of Massachusetts, in accordance with the spirit of its charter, the legislature of the Commonwealth has always recognized such institutions as charitable and exempt from state taxation, whether state, county or city. These Massachusetts statutes exempting this corporation from taxation ever since its incorporation should have great weight with the federal courts, even if not conclusive.

The use of the Social Law Library is far less restricted than many other institutions which have been held to be educational in their nature. Its membership is open to others than members of the Bar. While it is confined to Proprietors and Subscribers and to the officials enumerated, there does not appear to be any restrictions as to who may become a Proprietor or a Subscriber, provided he complies with the requirements of the by-laws. The restrictions as to law students is solely a matter of practical necessity, by reason of lack of space and the number of students

in the law schools located in Boston. If any considerable proportion of the students attending the law schools in Boston should come there for study, a crowded condition would result that would seriously interfere with its use. As a matter of fact, the students in the law schools are provided with adequate libraries in their schools for their use. The Social Law Library is intended for the use of those further advanced in the study as well as the practice of law.

It is inevitable that no collection of books in a field of specialized learning can be useful to the general public. Of necessity the group which has made that specialized field their life work will obtain more advantage therefrom than the public at large. Naturally an institution will be managed with that in view.

The entire framework of our system of law rests upon the soundness of the judicial decisions of the courts, which depend upon the thoroughness and care with which counsel have presented their cases, and the courts have opportunities for study and research. More than that, the foundation of our government itself rests upon principles of law that are essential to its preservation and the benefits that flow from it. To this extent an opportunity for research and an examination of those principles on which the correct decision of each case rests, and to enable lawyers to advise clients as to their rights in order to safeguard their personal and property rights, and to maintain peace and friendly relations in their respective communities, and to furnish opportunity to study those principles on which our state and federal government rests by a class of men who have been trained to understand and interpret them, is of vital consequence to the public at large.

It is stipulated that no part of the earnings of the corporation is paid to or distributed to any shareholder of the corporation by reason of his ownership of shares in the corporation as a condition of its exemption from taxation under Sec. 101 (6), supra. In speaking of this requirement in a statute, Mr. Justice Van Devanter in Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578, at page 581, 44 S.Ct. 204, at page 205, 68 L.Ed. 458, said:

"Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

"Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific and educational corporations and is measurably true of some religious corporations. Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted. This is recognized in Northwestern University v. People of Illinois ex rel. Miller, 99 U.S. 309, 324, 25 L.Ed. 387, where this court said: 'The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. * * *'"

This doctrine is also expressed in Regulation 94, Art. 101 (6)–1:

"A corporation otherwise exempt under Sec. 101 (6) does not lose its status as an exempt corporation by receiving income as rents, dividends and interest from investments, provided such income is devoted exclusively to one or more purposes specified in that section."

The contention of the government that the net earnings of the Social Law Library inure to the benefit of the shareholders or individuals, because any improvements of the Library rendering it more serviceable to its members is of special benefit to them; but though every improvement in a charitable institution confers additional benefits on those using it, or availing themselves of its benefits, such benefits have never been considered as taking the institution out of the class of charitable institutions because it has enabled it to do better educational, literary or charitable work, or because it resulted in distributing its benefits among private shareholders or individuals.

The Scottish and English cases cited in the appellant's brief are not controlling here or entitled to much weight. The

nature of the institutions under consideration in those cases is hardly comparable to the facts here involved.

We are also influenced in our conclusions by the decisions in analogous cases and the legislative attitude toward similar institutions, which we think have always treated a library, even though restricted in its use to certain groups who might naturally profit thereby, as a useful, educational and public institution.

We think on the agreed facts and in the light of reason and of the authorities, that the Social Law Library of Boston is an educational institution and under 101 (6) is exempt from the capital stock tax provided in Sec. 701 of the Revenue Act of 1934, 48 Stat. 680, 769, 26 U.S.C.A. § 1358.

The judgment will be:

The judgment of the District Court is affirmed, with interest to date of the judgment of this court.