SCHOLARSHIP ENDOWMENT FOUNDA-TION v. NICHOLAS, Collector of Internal Revenue.

No. 1869.

Circuit Court of Appeals, Tenth Circuit.

Sept. 6, 1939.

Hudson Moore, of Denver, Colo. (Wilbur F. Denious and Dayton Denious, both of Denver, Colo., on the brief), for appellant.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and S. Dee Hanson, Sp. Assts. to Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

Its applications for refund having been denied, Scholarship Endowment Foundation, hereinafter called the foundation, sued the Collector of Internal Revenue for the district of Colorado to recover income and excess profits taxes paid for the year 1936, and capital stock taxes paid for the years 1936 and 1937, with accrued interest thereon. Judgment was rendered for the Collector. 25 F.Supp. 511. The foundation appealed, and the question presented is whether it was entitled to exemption from such taxes.

The foundation was organized in 1932. Benjamin M. Rastall, his wife, and Wilbur F. Denious were the incorporators. The certificate of incorporation recites that it is a non-profit corporation; that its objects are to aid and assist students and others to secure training and education in all lines of endeavor, to engage in any and all forms of activities for assisting and training students and others for leadership or better to enable them to meet the duties and responsibilities of American citizenship, to receive gifts, bequests and devises of property or money, and hold, invest and reinvest the same and all other funds and property owned by it, or the proceeds thereof, without and free from the restrictions applicable to trustees or trust funds and all other restrictions and conditions expressly imposed by the donor; that there shall be three trustees of the corporation; and that Rastall, his wife, and Denious be selected for the first year. The by-laws in force in 1932 and 1933 provide that the trustees shall accept in their discretion all donations to the corporation which are in accord with its purposes; that when the capital amounts to at least one million dollars, they shall lend from the income and principal of such capital to young persons residing in the Rocky Mountain region such amounts as they may see fit to aid such persons in securing training or education; and that

they shall fix the date of maturity of such loans and the amount of interest to be paid. The by-laws were amended in May, 1934, by eliminating the provision that loans shall be made only after the capital shall have reached one million dollars, and by providing that the trustees may in their discretion aid such persons by the granting of outright scholarships carrying no obligation to repay money advanced under such scholarships.

Coincident in time with the organization of the foundation and the adoption of the by-laws, Rastall transferred to it corporate stocks and bonds of the then value of $34,000, and in consideration of the donation the foundation agreed in writing that it would pay all of the net income therefrom to the donor during his life, and after his death to his wife during her life. By a new agreement entered into in May, 1934, the donor relinquished all rights and interests in and to such stocks and securities, and in consideration thereof the foundation agreed to pay him annually during the remainder of his life the sum of five thousand dollars, and, after his death, to pay such sum to his wife annually during the balance of her life. Rastall made subsequent donations of stock and bonds. In 1936 the value of the estate thus acquired was $130,000, and in 1937 it was $165,000. No disbursements were made for scholarships in 1932 or 1933. The amounts distributed for scholarships in 1934, 1935, and 1936 were $100, $200, and $1000, respectively. The gross income in 1936 was $15,711.61, of which $11,241.93 represented capital gain, $4,026.19 represented dividends, and $443.-49 represented interest. After making certain deductions, including the annuity payment due the donor, the net income was $10,075.81. The donor actually drew on account of the annuity during that year only $2,000.

Exemption from taxation is neither lightly inferred nor readily implied and an asserted exemption will be denied unless it is plainly granted by statute. Phipps v. Commissioner, 10 Cir., 91 F.2d 627, 112 A.L.R. 1441.

The foundation relies upon section 101 (6) of the Revenue Act of 1936, 49 Stat. 1648, 1673, 26 U.S.C.A. § 103. (6) which provides that a corporation organized and operated exclusively for educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no part of the activities of which is devoted to carrying on propaganda or otherwise attempting to influence legislation shall be exempt from taxation under the title. Treasury Regulations 94, promulgated under the act, provides in effect that an educational organization within the meaning of the act is one designed primarily for the improvement and development of the capabilities of the individual, and that in order to be exempt under the section its net income must not inure in whole or in part to the benefit of private shareholders or individuals. It is plain that the foundation must meet two requirements in order to come within the ambit of the statute and be entitled to exemption under its provisions. It must be a corporation organized and operated exclusively for educational purposes, and none of its net earnings shall inure to the benefit of any private individual.

It may be conceded, without deciding, that under the provision contained in the original contract reserving to the donor and his wife the net income, the foundation merely acted as a conduit for the receipt and transmission of such income, and did not fall outside the statute for that reason. But the new contract was in force and effect throughout the years in question. Under its provisions the foundation acquired from the donor the right to receive in ownership the income, and in consideration therefor it obligated itself to pay him annually a specified sum during the remainder of his life, and thereafter to pay such sum to his wife during the balance of her life. The obligation was definite and certain in respect to amount and time of payment; the entire assets of the foundation, both capital and earnings, were unconditionally charged with the obligation; and during the period in question payments out of earnings were actually made to the donor on such obligation. It seems clear that a part of the earnings thus inured and were devoted to the benefit of a private individual within the intent and meaning of the statute, and that in result the foundation was not entitled to the exemption for which it contends.

The judgment is affirmed.