**JONES, Collector of Internal Revenue, v. BETTER BUSINESS BUREAU OF OKLAHOMA CITY, Inc.**

No. 2277.

Circuit Court of Appeals, Tenth Circuit.

Oct. 31, 1941.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U.S. Atty., and George H. McElroy, Asst. U.S. Atty., both of Oklahoma City, Okl., on the brief), for appellant.

Roy C. Lytle, of Oklahoma City, Okl. (Henry S. Griffing and Keaton, Wells & Johnston, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Better Business Bureau [1] is a corporation organized under Art. 15, Ch. 34, C.O.S. 1921, 18 Okl.St.Ann. § 541 et seq., which provides for the organization of corporations for religious, charitable, educational, benevolent or scientific purposes. Its charter was issued June 25, 1930. Its purposes as declared in its Articles of Incorporation are

"To inform and to educate the public by various forms of publicity or otherwise, as to the difference between honest and legitimate advertising and that which is misleading, dishonest and improper in order to create public confidence in honest and legitimate advertising and honest and legitimate business, and to prevent the public from being misled by persons using unfair advertisements or unfair business methods.

"By all proper means to educate and inform merchants, manufacturers and other business men as to honest, fair and legitimate advertising and business methods and the discouragement of unfair competition and unfair dealings with the public."

It has no capital stock. It has a membership of approximately 200 business and professional men and women. It derives its income from the annual subscriptions of its members and others. It realizes no profit and has no net earnings which inure to the benefit of any private shareholder or individual. It paid social security taxes under protest for the period from January 1, 1937, to March 31, 1939, and brought this action against H. C. Jones, Collector of Internal Revenue, to recover the amount so paid. From a judgment in favor of the Bureau, the Collector has appealed.

The applicable statute and regulation are set out in Note 2. [2]

The sole issue presented is whether the Bureau is exempt from the tax imposed by § 811 of the Social Security Act, 49 Stat. 620, 42 U.S.C.A. § 1011.

---

[1] Hereinafter called the Bureau.

[2] Sec. 811 of the Social Security Act, 49 Stat. 620, 639, in part reads as follows:

"(b) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—* * *

"(8) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Tr. Reg. No. 91, Art. 12, promulgated under Title 8 of the Social Security Act, in part reads as follows:

"Religious, charitable, scientific, literary, and educational organizations and community chests—Services performed by any employee of an organization of the class specified in Section 811(b) (8) are excepted.

"For the purpose of the exception the nature of the service is immaterial; the statutory test is the character of the organization for which the service is performed.

"In all cases, in order to establish its status under the statutory classification, the organization must meet two tests:

"(1) It must be organized and operated exclusively for one or more of the specific purposes; and

"(2) Its net income must not inure in whole or in part to the benefit of private shareholders or individuals....

"An educational organization within the meaning of section 811(b) (8) of the Act is one designed primarily for the improvement or development of the capabilities of the individual, but, under exceptional circumstances, may include an association whose sole purpose is the instruction of the public, or an association whose primary purpose is to give lectures on subjects useful to the individual and beneficial to the community, even though an association of either class has incidental amusement features. An organization formed, or availed of, to disseminate controversial or partisan propaganda or which by any substantial part of its activities attempts to influence legislation is not an educational organization within the meaning of section 811(b) (8) of the Act."

The Bureau carries on a continuous campaign of fraud prevention work. It warns the public against fraudulent plans and schemes. It endeavors to induce the local advertising agencies not to accept advertisements from the promoters of such plans and schemes. Through newspaper advertisements, radio talks, bulletins, and posters, it acquaints the public with fraudulent practices. It exposes specific fraudulent practices being carried on in Oklahoma City. It also endeavors to induce merchants to refrain from misleading advertising, extravagant claims, and price comparisons, and to conform to a high standard of business ethics. It endeavors to educate the consumer to buy wisely.

Its services are rendered to nonmembers as well as members and are made available generally to the people in and about Oklahoma City. It also furnishes information to like Bureaus in other states.

Its officers and directors receive no compensation.

Specifically, the issue presented is whether the Bureau is organized and operated exclusively for educational purposes.

█ While the general rule is that tax-exempt statutes are to be construed strictly in favor of the government, the rule does not apply to exemption statutes of the character here involved. Such a statute should be liberally construed so as to further rather than hinder its beneficent purpose. The purpose of this exemption is to encourage religious, charitable, scientific, literary, and educational associations not operating for the profit of any private shareholder or individual.[3]

Education is defined in Webster's New International Dictionary, Second Edition, as follows: "The totality of the information and qualities acquired through instruction and training, which further the development of an individual physically, mentally, and morally." It was defined by the Supreme Court of Nebraska in Ancient, etc., S.R. of Freemasonry v. Board of County Commissioners, 122 Neb. 586, 241 N.W. 93, 96, 95, 81 A.L.R. 1166, as follows:

"Furthermore, lexicographers and the courts agree in defining 'educational' as pertaining to 'education.' The latter word taken in its full sense is a broad, comprehensive term and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical."

As the trial court in its opinion in the instant case well said:

"Educational training is not confined to colleges, universities or even the public schools, but consists, in the broadest sense, of acquiring information or inspirational suggestions which cause the individual to think and act along proper lines. Certainly, the teaching of honesty, integrity, and truthfulness is the very highest objective of an education." D.C., 34 F.Supp. 573, 575.

It is a well-known fact that educators are now advocating high school training on the subject of intelligent buying.

█ Here, the purpose of the Bureau is to educate the public concerning fraudulent schemes and practices and to enable the members of the public to avoid such practices and to become better and more intelligent buyers, and to inculcate higher ethical standards in business practices and advertising. Business intercourse is an important activity of everyday life. The inculcating of higher standards and of business ethics on the part of the merchant, inducing the operators of advertising mediums to insist on honest advertising, acquainting the public with fraudulent schemes and practices, and informing the individual how he may avoid such practices and buy more wisely, while within a limited field, are, in our opinion, educational in character.

We, therefore, conclude that the Bureau is within the exemption and that the judgment below should be affirmed.

MURRAH, Circuit Judge (dissenting).

I cannot agree that the highly laudable and commendable purposes for which the Better Business Bureau is organized and

[3] United States v. Proprietors of Social Law Library, 1 Cir., 102 F.2d 481; Harrison v. Barker Annuity Fund, 7 Cir., 90 F.2d 286, 288; Union & New Haven Trust Co. v. Eaton, D.C.Conn., 20 F.2d 419, 421; Commissioner v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788, 791; Lederer v. Stockton, 260 U.S. 3, 8, 43 S.Ct. 5, 67 L.Ed. 99; Old Colony Trust Co. v. Commissioner, 301 U.S. 379, 384, 57 S.Ct. 813, 81 L.Ed. 1169.

operated are "exclusively educational", as those words are used in the Social Security Act of 1935, as amended, c. 531, Title 8, Section 811(b) (8), 42 U.S.C.A. § 1011(b) (8), and as those words are defined in Tr. Reg. No. 91, Art. 12. Neither can I agree that the rule of nontaxability generally applied to nonprofit sharing corporations applies to the question of the application of Social Security taxes under the exemption clauses, supra.

Tr.Reg. No. 91, Art. 12, provides in part as follows: "An educational organization within the meaning of section 811(b) (8) of the Act is one designed primarily for the improvement or development of the capabilities of the individual, but, under exceptional circumstances, may include an association whose primary purpose is to give lectures on subjects useful to the individual and beneficial to the community, even though an association of either class has incidental amusement features. * *"

It must be conceded that the organization was not one organized or operated as "one designed primarily for the improvement or development of the capabilities of the individual". It then becomes necessary to determine whether there is presented "exceptional circumstances" so as to bring this organization within the very narrow limits of this exception. Organizations generally classified as business leagues, chambers of commerce, civic leagues, and trade associations have consistently been exempt from income tax because they are not organized for profit. Having no profit motive, except the furtherance of the aims of those sponsoring the same, they can have no taxable income, but they are not exempt from the Social Security tax, and as stated in the majority opinion, likewise religious, charitable, scientific, literary and educational organizations, not operated for the profit of any private shareholders or individuals, are consistently exempt from taxation and the rule exempting such organizations from taxation is generally given a liberal construction in order to further, rather than to hinder their beneficient purposes.

In my opinion, the question of whether or not such an organization is exempt from Social Security taxes, turns upon an entirely different ground, based upon entirely different considerations. Here, the incidence of the tax is not upon the realization of income, but upon "employment". "For the purpose of the exception the nature of the service is immaterial; the statutory test

is the character of the organization for which the service is performed." Tr.Reg. 91, Art. 12.

When viewed in a broad sense, the purposes, activities, and functions of the Bureau partake of education and learning, in that it imparts information to the uninformed; the ignorant are enlightened; the unsuspecting are warned; the deceiver is exposed, and the evils of fraud are corrected. For these services no one receives a pecuniary benefit and no one is paid a fee. Yet, when viewed in its more narrow and restricted sense, and as measured by the words of the statutory exemption, in my opinion, it falls short of the rule which requires strict adherence in order to come within its protective provisions and I cannot ascribe to it the exclusiveness necessary to its exemption.

For these reasons, I respectfully dissent.