## BOHEMIAN GYMNASTIC ASS'N SOKOL OF CITY OF NEW YORK v. HIGGINS, Collector of Internal Revenue.

### No. 59.

Circuit Court of Appeals, Second Circuit.

March 8, 1945.

James B. M. McNally, U. S. Atty., of New York City (Laurence H. Axman, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Joel J. Weiner, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the Collector of Internal Revenue from a judgment in favor of the plaintiff rendered after a trial before Judge Conger without a jury. He held that the plaintiff, Bohemian Gymnastic, was a corporation organized exclusively for educational purposes, no part of the net earnings of which accrued to the benefit of any shareholder or individual, hence was not liable to pay Social Security taxes with respect to the wages paid to its employees and was entitled to a refund of $47.87 of those taxes which it had paid. In our opinion the decision was right and should be affirmed.

Section 1426(b) (8), 26 U.S.C.A. Internal Revenue Code, provides for the exemption from Social Security taxes in case of:

"(8) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

The plaintiff, which we shall hereafter call Bohemian, is a membership corporation originally organized in 1893 under the laws of the State of New York with a charter which stated that its business and

object should be "Athletic, Gymnastic, Mutual Benefit, Benevolent, Dramatical And Literary". Its charter was amended on October 30, 1939 and November 6, 1940 so as somewhat to extend or better to set forth its purposes. The purposes and corporate powers as stated in the last amendment were to create a center for American culture whereby to make known and readily available the contributions of the Czech and Slovak people in the United States; to promote such cultural, social, benevolent and charitable activities as fully comport with the ideals of Americanism and express appreciation of Czechoslovak culture and tradition; to help and assist distressed and sick members and render relief to their widows and orphans, membership to be limited to 1,000 benefit members and all aid to be voluntary. Added objects were:

"To promote and secure harmonious development of sound mind and a healthy body, free and progressive, fostering true citizenship with all the loyal support of American Institutions, and to offer opportunities to display the individuality, character, and achievement of the members in physical culture, aesthetics and applied arts, in schools, gymnasiums, reading rooms, and camps.

"To conduct and encourage literary activities, maintain divisions for orchestral music, singing, dramatic arts, folklore and classic dancing.

"To provide for recreational and social activities for its members and to foster friendship and mutual respect; to advance the cultural development of its members and to promote their physical welfare by encouraging them to partake and compete in healthful indoor and outdoor sports and athletics."

The amended charter empowered Bohemian to take and hold any real or personal property necessary for or incidental to the purposes and objects of the association and provided that all income derived by the association after deducting expenses directly connected with the means of conducting its activities should be applied only for the advancement of the corporate purposes stated, "and for no profit of any individual, or any other organization, of whatsoever kind and nature."

The following was the schedule of membership dues:

(a) Active membership $1.30 per month

(b) Contributing membership $.80 per month

(c) Life membership (a member of 50 years or over) $.50 per month.

In case of emergency special assessments to members to be made by vote of the Association, but not to exceed $2 per year for each member.

The activities of the organization are conducted in a building owned by it at East 71st Street, New York City, having in the basement a bowling alley, kitchen and general room, and a restaurant, bar, sitting room, meeting room and gymnasium on the ground floor. The gymnasium occupies about three-quarters of the ground and first floors, extending from the ground floor up through the first floor. The first floor also includes a music room and library.

The gymnasium is open every day of the week. On every day but Saturday there are classes with free athletic instruction held at definite hours, some for groups of boys between six and thirteen years of age and some for groups of boys between fourteen and eighteen years of age. A series of calisthenic drills are given to the older boys involving different exercises and finally advancing to 144 movements. There are also free classes regularly held for younger and older girls and for men and women. In addition to this, there are classes for choral singing and voice culture, taught without charge, for the benefit of any pupils who may wish to attend them, by a professional instructor paid by Bohemian. Bohemian also maintains a summer camp in Connecticut accommodating about fifty-five boys, which is a nonprofit enterprise, in which the children are taught carpentry, nature study and physical training.

The bowling alley is only open to members except on special occasions when outside organizations or groups rent it under special arrangement. The gymnasium and meeting rooms are also occasionally rented. Certain revenues are derived from these sources and some relatively small additional financial receipts are derived from parties held on Christmas and New Year's eve.

The only member of the plaintiff who receives any compensation is the financial secretary who is paid $250 per year for two or three hours work per day, in keeping books, making up financial statements and preparing tax returns.

The receipts for the year ending June 30, 1942 from dues, donations and entertainments amounted to $4,135.69 from which $586.50 was paid out for death benefits and $70 for sick benefits. In that year $329 was paid to the financial secretary and for out-of-pocket disbursements to other officers and to a custodian; $80 was paid to the glee club instructor; $286 to the athletic instructors, and further sums were paid for supplies for repairs of equipment and other miscellaneous expenses, leaving a balance of $1200.21. During the same period the bar and restaurant yielded gross receipts of $66,386.42, and other receipts, connected with the operation of the building, amounted to $2,803.22, making a gross total of $69,189.64. Food, supplies, heat, light, wages of employees, and other expenses charged to the maintenance and operation of the building amounted to $66,-596.94, leaving a net of $3,292.70, if we include an increase in inventory of $700.

Judge Conger found:

"8. That the plaintiff was organized and operated exclusively as an educational organization."

"9. That no part of the net income inures in whole or in part to the benefit of private shareholders or individuals."

"12. The bar and restaurant are open to the public and are owned and operated by the plaintiff solely and exclusively for the purpose of raising sufficient funds to carry out its educational functions."

"13. The educational purpose of the plaintiff consists of gymnastic and athletic classes, contests, games and summer camping projects, musical and dramatic classes, recitals, folk and classical dancing and art exhibits."

"14. This program is supplemented by regular class room lectures in first aid, hygiene, citizenship, civics, literary work and national defense."

■ The findings and a reasonable interpretation of the evidence answer the defendant's claim that Bohemian is a mere social club. The testimony furnishes ample ground for concluding, as the trial judge did, that the methodical instruction given by Bohemian in physical and cultural development and its continuous pursuit of those objects as desirable ends are far different from the mere pursuit of social activity for its own sake and may properly be regarded as "educational".

■ The question remains whether the receipt of a large part of the income from the restaurant and bar maintained on Bohemian's premises negatives its claim of exemption as a corporation "operated exclusively for * * * educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual. * * *".

In Trinidad v. Sagrada Orden, etc., 263 U.S. 578, 44 S.Ct. 204, 206, 68 L.Ed. 458, the Supreme Court held that income derived by a religious corporation from its land, stock, and money loaned at interest, and also from the sale of wine, chocolate and other articles supplied for use in its churches and schools did not destroy its statutory exemption because, as Justice Van Devanter said: "financial gain is not the end to which they are directed" and the clause exempting corporations organized and operated exclusively for "religious, charitable, scientific or educational purposes", no part of which inures to the benefit of any private stockholder or individual "makes the destination the ultimate test of exemption". We reached the same conclusion in Roche's Beach, Inc. v. Commissioner of Internal Revenue, 2 Cir., 96 F.2d 776, where we held income derived from a restaurant and rents of property belonging to a subsidiary of a charitable foundation, the profits from which were turned over to the foundation, to be tax exempt. In the case at bar the ultimate object to which the corporate income is devoted is to promote education. To that end all funds of the corporation, including membership dues, as well as the profits derived from the bar and restaurant and the receipts obtained from renting out the bowling alley, gymnasium or other parts of the building, were destined. Therefore, Bohemian is exempt from the Social Security Tax claimed by the Collector unless the income from the bar and restaurant inured to "the benefit of any private shareholder or individual" within the meaning of Section 1426 (b) (8) supra.

■ If Bohemian were a mere social club, our decisions in Jockey Club v. Helvering, 2 Cir., 76 F.2d 597, and West Side Tennis Club v. Commissioner of Internal Revenue, 2 Cir., 111 F.2d 6, might require us to hold that the receipt of such a large proportion of its income from the bar and restaurant, patronized as they were not only by the members, but even more by the outside public, negatives tax exemp-

tion. If Bohemian were a mere social club such receipts from persons other than members might be regarded as earnings from a business beyond normal corporate purposes and ordinary returns from investments of its property, and also might be regarded as inuring to the benefit of its members by lessening their dues. We have construed statutory exemptions somewhat narrowly in the case of social clubs and have treated income derived by them from outside sources, if considerable in amount and recurrent, as destroying the exemption. But in the case of educational or charitable corporations the exemption is construed broadly as we held that it should be in Roche's Beach, Inc. v. Commissioner, 96 F.2d 776, 779, supra. See also Helvering v. Bliss, 193 U.S. 144, 150, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207; Jones v. Better Business Bureau of Oklahoma City, 10 Cir., 123 F.2d 767, 769; United States v. Proprietors of Social Law Library, 1 Cir., 102 F.2d 481, 482. If so construed, the words "inure to the benefit" would, we think, require some benefit other than mere membership and a possible reduction in the amount of dues contributed to the very educational or charitable objects for which the corporation was organized. By this interpretation of the exemption clause the very reasonable decision of the First Circuit in United States v. Proprietors of Social Law Library, 102 F.2d 481, supra, can be reconciled with the Jockey Club and West Side Tennis Club decisions, supra, where we dealt only with the exemption in relation to social clubs.

The benefit that is conferred upon the members in the case at bar is really an opportunity to receive and promote a certain type of education. Their contributions in the way of dues, whether more or less in amount, are also for educational purposes. We cannot believe that the statute was ever intended to preclude an exemption in such a case. The result might be to deprive a religious, charitable or educational corporation which raised money through entertainments or some business not representing its primary objects of any exemption, if organized with members paying trifling dues, and to grant an exemption if no dues were to be paid. The distinction seems to us an unreal one. We think an exemption under the present circumstances has never been denied.

For the above reasons the judgment is affirmed.