Eugene S. LEWIS, D. P. B. Marshall, C. L. Rogers, L. N. Davis and Willard H. Marshall, as Trustees of the B. F. and Rose H. Perkins Foundation, a trust, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 4361.

United States District Court
D. Wyoming.

Jan. 19, 1961.

Henry A. Burgess, Sheridan, Wyo., for plaintiffs.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., and J. J. Kilgariff, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

KERR, District Judge.

This action is brought under 28 U.S.C. § 1346(a) (1) to recover the tax on income in the amount of $101,257.95, together with $12,321.89 as interest thereon, said sums having been paid under protest. The plaintiffs are the trustees of the Testamentary Trust established pursuant to the terms of the Last Will and Testament of B. F. Perkins, deceased. Contending that the B. F. and Rose H. Perkins Foundation qualifies for the tax exemption under Section 501(a) and 501(c) (3) of the Internal Revenue Code of 1954, plaintiffs claim that the taxes for the years 1955, 1956, 1957 and 1958 were erroneously and illegally assessed and collected and that payment thereof constitutes an overpayment which should be refunded.

Only two issues need be adjudicated by this Court, viz.: (1) is the trust organized and operated exclusively for charitable or educational purposes, and (2), does any part of its net earnings inure to the benefit of any private shareholder or individual? (Sections 501(a) and 501(c) (3), Internal Revenue Code of 1954; 26 U.S.C.A. § 501).

Answering question number 1 affirmatively and question number 2 negatively, I find that the plaintiffs are entitled to a refund in the amount prayed for as overpayment of income taxes during the years 1955, 1956, 1957 and 1958.

Tax exemption is allowed if the purpose of the trust and the destination of its income come within the ambit of the taxing laws. Trinidad v. Sagrada Orden, 1924, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; Scofield v. Rio Farms Inc., 5 Cir., 1953, 205 F.2d 68; Willingham v. Home Oil Mill, 5 Cir., 1950, 181 F.2d 9; Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F.2d 483. In order to determine whether the trustees come within the exemption provisions it is necessary and proper for the Court to look to the instruments by which the trust was organized and according to which it was operated during the taxing years in dispute. Willingham v. Home Oil Mill, supra; Harrison v. Barker Annuity Fund, 7 Cir., 1937, 90 F.2d 286, 289.

To come within the first requirement of Section 501(a) and 501(c) (3), it must first appear that the B. F. and Rose H. Perkins Foundation is "organized and operated exclusively for * * * charitable * * * or educational purposes * * *." The express purpose of the Foundation is to provide medical care and educational opportunities to the youth of Sheridan County, Wyoming. Such benefits to this segment of the public is its exclusive purpose as declared in the Last Will and Testament of B. F. Perkins and in the By-Laws of the Foundation.

The record is replete with evidence that the Foundation has complied with the testamentary directions and has expended the income only for the purposes set out in the will. During the years 1955 through 1958 fifty applicants received educational loans in the amount of $29,376.25, while only four applications totalling $2,281 were disapproved. Medical assistance during the same period was given to seventy-one applicants totalling $12,753.83, and only thirty-four applications for medical assistance in the total amount of $3,188 were disapproved.

The Foundation was not organized to engage in any business except in a limited way to acquire income to execute the trustor's intentions. According to the testimony the sources of income of the Foundation are dividends from stocks and bonds, rentals on real property and interest on mortgage loans. When the Foundation received the assets of the estate of B. F. Perkins, deceased, it received as a part thereof a business venture in the nature of a ranch which had been operated by the deceased during his lifetime. After operating the ranch about one year the Foundation deemed the returns therefrom inadequate and therefore determined to sell it. It was, in fact, sold about five years after the Foundation took it over. Since 1946 and during the years 1955 through 1958 the Foundation has not engaged in any business venture. The attorney for the Foundation testified that it has never been the official policy of the Foundation to resume business operations at some future date.

■ One need only look at the will of B. F. Perkins to conclude that any and all activities of the Foundation are for charitable and educational purposes. In "Item XIII" of the will the testator expressed his intention to—

"provide a means to the worthy youth of said communities, regardless of sex, unable themselves to provide it, to obtain a fair education to enable them the better to cope with the world, and, in certain cases appearing to warrant it, to obtain a college or university training to fit them for one of the learned professions toward which they may be predisposed and for which they may possess the necessary back ground. Also, it is my desire that the youth of said communities, suffering from physical deformity or malformation susceptible of correction by a competent surgeon, or of a youth suffering from disabling personal injury due to accident, or of a youth suffering from severe sickness or bodily malady, and the like, capable of being alleviated, by proper medical and/or surgical treatment, and who does not himself or herself directly or indirectly possess the means of providing such relief, shall be beneficiaries of said trust; and to said end and for the realization of said purposes, I devote the residue of my estate to said named trustees, subject to the payment of said monthly allowances out of the net income * * *".

In the Last Will and Testament also the trustees are directed, inter alia, to "provide that the entire income of the trust * * * be applied strictly in accordance with the directions in this will contained and be restricted to the objects hereinbefore set forth". The Trustees are empowered "to receive and collect the income, rents, issues and profits of the trust estate and use the same in strict accordance with and for the purposes named in this trust and no other".

The additional powers expressed in the will to which the defendant points as authorization for the trustees to engage in a business in contravention of the organizational test, are prefaced with the following limitation within which those powers may be exercised:

"To carry out the express purposes of this trust, and in aid of its execution and the proper administration, management and disposition of the trust estate, the trustees are vested with the following additional powers * * *:

"(1) To hold, maintain, operate or continue, at the risk of the trust estate, so long as they deem it advisable, any and all property or business which it may receive hereunder; * * *"

The Commissioner of Internal Revenue determined the tax liability of the Foundation on the basis that it did not meet the organizational test expressed in Regulations 1.501(c) (3)–1 (b) (iii), which reads in part as follows:

"Thus, an organization that is empowered by its articles 'to engage in a manufacturing business' * *

does not meet the organizational test regardless of the fact that its articles may state that such organization is created 'for charitable purposes within the meaning of Section 501(c) (3) of the Internal Revenue Code'."

██ It is my opinion that this regulation does not foreclose the tax exempt status of the Foundation because the authority of the trustees to carry on a business is delimited by the language prefacing the grant of that power as quoted above. The trustees have the power to conduct a business only if that operation will aid them in carrying out "the express purposes of this Trust * * *". This authority is decidedly and strictly limited to further the tax exempt purposes of the Foundation and it clearly meets the organizational test.

Counsel for the government has confused the requirements in sub-section (iii) of the regulation with those in subsection (iv). He quotes the provisions that "The fact that the actual operations of such an organization have been exclusively in furtherance of one or more exempt purposes shall not be sufficient to permit the organization to meet the organizational test" and further that an organization will not "meet the organizational test as a result of statements or other evidence that the members thereof intend to operate only in furtherance of one or more exempt purposes". These qualifications relate only to the situation set out in that subsection (iv) which regulates an organization, the articles of which "are broader than the purposes specified in Section 501(c) (3)". Such is not the situation or issue in the case at bar. The provisions of the regulations should not be read out of context, for to do so would misconstrue the plain intent of the regulatory body and of Congress.

It is the government's contention that the Foundation is not entitled to the income tax exemption, since part of the net income of the Foundation inures to the benefit of an individual.

Under the terms of the will of Benjamin F. Perkins, the trustees were directed to pay annuities to certain named relatives of the decedent, all but one of whom died prior to 1944. It is because of this one legatee, Rose Mary Perkins, now Rose Mary Flanigan, a grandniece of the settlor, that the Commissioner of Internal Revenue determined that the Foundation was not entitled to tax exemption and that it was obligated to pay the taxes assessed. In the judgment of the trustees, the bequest to Rose Mary Perkins entitled her to receive payments from the trust until she attained the age of twenty-one years, or until she married, whichever event occurred first. She attained her majority some time between 1947 and 1949. On February 24, 1949, the District Court of the Fourth Judicial District in Sheridan County, Wyoming, construed the Last Will and Testament of Benjamin F. Perkins and decreed that Rose Mary Perkins, during her lifetime is entitled to receive $50 per month "from the Estate" and "under the terms of the Last Will and Testament of Benjamin F. Perkins". Pursuant to this decree, the Trustees have been making that monthly payment out of the net income of the Trust funds in their hands.

Section 1.501(a)–1–(c) of the regulations relating to exempt organizations under Section 501 of the Internal Revenue Code of 1954 contains the following definition: "The words 'private shareholder or individual' in Section 501 refer to persons having a personal and private interest in the activities of the organization". No evidence was adduced at the hearing before this court that Rose Mary Perkins or any other individual has any personal or private interest in the activities of the B. F. and Rose H. Perkins Foundation.

In support of its contention the government relies on the case of Scholarship Endowment Foundation v. Nicholas, D.C., 25 F.Supp. 511, affirmed 10 Cir., 1939, 106 F.2d 552, certiorari denied 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520. I agree with the conclusion in that case and I consider the rationale sound. The facts leading to that decision, however, are totally different from the factual sit-

uation before me. That case turned on the fact that there was a grant for a consideration; that the grantor incorporated the so-called trust foundation; that he contracted with the trustees of the corporation that he should receive the benefits from the trust and retain the management and control over it; and that the donor and his wife constituted a majority of the trustees. The By-Laws originally provided that no charitable payments were to be made until the corporation accumulated a fund of one million dollars, though this requirement was later eliminated. The very existence of the trust depended upon the fulfillment of the condition that payments be made to the donor.

■ Such is not the case at bar. Payments made to Rose Mary Perkins are not a condition of the trust. Such payments are made to her as a legacy under the terms of the Last Will and Testament of the creator of the trust and pursuant to the Court order. Rose Mary Perkins has no interest in the trust for she will receive her legacy regardless of whether there is income or whether payment must be made out of the principal.

This case is analogous to the case of Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F.2d 483, wherein the income of the Foundation was held tax exempt even though the widow of the trustor received payments from the earnings of the Foundation. There, as here, such payments were not made or received by the individual as earnings, profits, or dividends of the Foundation. Rather, they were paid to the individual to discharge an obligation which arose dehors the purpose of the Foundation. In the Orton case the payments were made under a contract between the Foundation and the individual; here the payments are made to Rose Mary Perkins pursuant to the provisions of the Last Will and Testament of B. F. Perkins. Rose Mary Perkins is not benefited by, and the payments to her are not the purpose of, nor the natural outgrowth of, the establishment or operation of the B. F. and Rose H. Perkins Foundation. Cf. Horace

Heidt Foundation, Ct.Cl.1959, 170 F. Supp. 634.

■ I am not unmindful of the admonition not to infer lightly nor readily imply exemptions from taxation. Scholarship Endowment Foundation v. Nicholas, supra, 106 F.2d at page 553; Phipps v. Commissioner, 10 Cir., 1937, 91 F.2d 627, 112 A.L.R. 1441. Defendant has misdirected the rule of strict construction of exemption statutes. Helvering v. Northwest Steel Rolling Mills, Inc., 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; United States v. Ogilvie Hardware Co., Inc., 1947, 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192. In neither of these cases cited by defendant does the tax exemption relate to charitable or educational purposes. The exception to the general rule applies in the case before me. I must apply a "liberal, rather than a cheese paring, construction" of statutes relating to exemptions for charitable, religious, educational or similar purposes. Scofield v. Rio Farms, Inc., 5 Cir., 1953, 205 F.2d 68; Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F.2d 483, 486; United States v. Proprietors of Social Law Library, 1 Cir., 1939, 102 F.2d 481; Harrison v. Barker Annuity Fund, 7 Cir., 1937, 90 F.2d 286; Home Oil Mill v. Willingham, D.C.Ala. 1945, 68 F.Supp. 525, 530.

The reason for the exception to the rule of strict construction is succinctly stated in Harrison v. Barker Annuity Funds, supra, 90 F.2d at page 288 as follows: "Accordingly the courts quite generally have extended liberal construction to statutes furthering the encouragement of bequests for purposes which tend toward the public good without reference to personal or selfish motives".

For the reasons above stated I find that the B. F. and Rose H. Perkins Foundation complies with the provisions of Section 501(a) and 501(c) (3) of the Internal Revenue Code of 1954, and that the income of said organization is exempt from taxation. I find further that plaintiffs are entitled to a refund of the income tax paid during the years 1955 through 1958 in the amount of $101,257.

95, together with interest thereon in the amount of $12,321.89, and interest on the total sum of $113,579.84.

The facts herein stated and the conclusions of law herein expressed shall be considered the Findings of Fact and the Conclusions of Law. Plaintiffs will submit Judgment in accordance with this memorandum within ten (10) days from this date and the clerk will enter an order accordingly.