DEBS MEMORIAL RADIO FUND, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 576.   Promulgated June 5, 1944.

*I. Herman Sher, Esq.*, for the petitioner.

*Sidney B. Gambill, Esq.*, and *Laurence F. Casey, Esq.*, for the respondent.

954

OPINION.

STERNHAGEN, *Judge*: 1. The petitioner claims exemption from excess profits tax by virtue of section 727, Internal Revenue Code, as a corporation exempt from income tax under section 101 (8) : "Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare  *  *  *." Regulations 103, section 19.101 (8)–1, provides: "Civic leagues entitled to exemption under section 101 (8) comprise those not organized for profit but operated exclusively for purposes beneficial to the community as a whole, and, in general, include organizations engaged in promoting the welfare of mankind  *  *  *." In the notice of deficiency the Commissioner held "your organization is not an exempt corporation as defined by section 101 of the Internal Revenue Code."

Thus, the petitioner is required to prove that it was not organized for profit [1] and that it is operated exclusively for the promotion of social welfare. Adopting the propositions that incorporation under the New York Stock Corporation Law is not itself preclusive of a claim for exemption (*Anderson Country Club, Inc.*, 2 T. C. 1238, 1242) and that the corporation may properly be regarded as a civic organization (cf. *Amalgamated Housing Corporation*, 37 B. T. A. 817, 825; affirmed *per curiam*, 108 Fed. (2d) 1010), we are of opinion that the evidence fails to show that the corporation was not organized for profit. Doubt on that point operates to defeat the claim for exemption. There is nothing in the stated purposes set forth in the articles of incorporation to suggest that profit is not among the purposes, while on the other hand there is much to indicate business and financial purposes which can only be fulfilled by seeking profit. The first purpose stated is not merely to broadcast, but to engage in the business of broadcasting, and the corporation may broadcast matter of every kind and any description available. All of the purposes are stated in language carefully drawn consistently with the promotion of business purposes and are in some instances expressly stated in terms of business purpose.[2]

---

[1] The petitioner often, in its argument, departs from the statutory language by treating the question as if it were, whether the corporation is a "nonprofit sharing" corporation, which may be more than a linguistic difference since a corporation may be organized for profit and yet not have or intend to have its profits shared.

[2] In considering copyright infringement, the District Court. in 1942, while recognizing the radio station in 1940 as a nonprofit station, held a particular broadcast on a sustaining program to be for profit since both the commercial and the sustaining program were part of the general business and:

The petitioner urges that the statement of purposes of the charter is unimportant in view of the fact that it is the successor of an unincorporated membership association which was organized as a memorial to the late Eugene V. Debs by his friends, with the idea of conducting a free public radio forum for the dissemination of liberal and progressive social views, and that the corporation should be recognized as organized to carry on that purpose. An answer to this is that if that had been the sole purpose and there was no purpose of profit, the organizers of the corporation could have made that clear in the articles and would not have left it to construction, or could have organized a non-stock corporation under the "Membership Corporation Law." When this corporation was organized in 1928, the income tax law had been in operation for fifteen years, and the exact words of this exemption had been used since the first revenue act. (Revenue Act of 1913, sec. II (G) (a).) Also, it was clear in extant decisions that, although an exemption was not lost by a corporation engaging in business for profit, this was only when such business operations for profit were merely incidental to the promotion of a grand charitable purpose and activity. *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578; *Unity School of Christianity*, 4 B. T. A. 61. See also *Hanover Improvement Society, Inc.* v. *Gagne*, 92 Fed. (2d) 888. Under such circumstances, the decision of the question whether the corporation was organized for profit may not be rested upon the testimony that the founders originally intended only to establish a free public forum for educational, cultural, and civic purposes without financial gain in total disregard of the carefully drawn expression of business purposes contained in the articles. Nor is the decision greatly influenced by the provision of the bylaws after the change of 1932 that profits would not be distributed but would be used for the improvement of the radio service or for the civic, educational, and cultural purposes. The use of profits for the improvement of the radio service is consistent with a profit purpose, and it is only joined with the civic, cultural, and educational purposes by the disjunctive "or" and therefore not restricted to such nonprofit purposes. Since the language used in respect of the corporation's rights, powers, and activities was deliberately chosen, there is little reason to deflect its meaning for a liberal effect.

There is no restriction in this section of the statute, as in some of the other exemption sections—i. e., subsections 6 and 7—that no part of the income shall inure to the benefit of any private shareholder or

---

"* * * all must be considered in ascertaining the character of the station. In the present case, the station is operated in much the same way as a commercial station, and I can see no good reason why it should be shielded from copyright infringement insofar as performances on sustaining programs are concerned. The commercial broadcasts occupy at least one-third of the station's available time, and this purely commercial business determines the character of the performance on the sustaining programs as being for profit." *Associated Music Publishers* v. *Debs Mem. Radio Fund*, 46 F. Supp. 829.

individual; the restriction stated is that the corporation must be "not organized for profit." This does not permit the exemption of any corporation organized for profit, even though such corporation be inhibited from distributing its profits to individuals. The statutory exemption precludes any corporation unless it is not organized for profit, and it matters not that, being organized for and having profits, it chooses to use them for one purpose rather than another. *Amalgamated Housing Corporation*, 37 B. T. A. 817. This corporation, as permitted by its charter, had profits and chose by its amended bylaw of February 23, 1932, to restrict itself in their use to the improvement of its radio service or for its civic, educational and cultural purposes. In the tax year it had gross income from broadcasting amounting to $323.834.16 and net income of $52.955.36. It does not appear in the evidence just what was done with this income, although it is clear that no dividends have at any time been distributed. The omission to distribute dividends is however not an indication that the corporation itself was not organized for profit, for it is not unreasonable to infer that profits were used to enlarge, expand, and improve the radio facilities and service for both commercial and sustaining programs. The station was in business competition with other radio stations in its commercial broadcasting, and it was required to maintain its equipment and service adequately to enable it to meet that competition. This commercial broadcasting was important and took a large part of the time allotted to the corporation, from which it derived a substantial and increasing income. It can not be said that, despite the profit sought and obtained from it, the corporation was not organized for profit, even though its civic function was regarded by its management as more important.

We think that the evidence fails to show that the corporation meets the first requirement for exemption, that it be not organized for profit.

The evidence was also largely directed to the second requirement of the statute, that the corporation be operated exclusively for the promotion of social welfare. We may not consider this requirement too literally as involving a definitive meaning of "promotion of social welfare" or requiring a strict application of the word "exclusively"; nevertheless the extent of the operations of the corporation and its radio station for profit on an ordinary commercial basis in promotion of other ends than social welfare prevent even a liberal application of the statutory exemption. Clearly the doctrine of the *Trinidad* case, the *Roche's Beach* case (96 Fed. (2d) 776), the *Hanover* case, and the *Unity School* case, can not be applied to this corporation. Its activities are to too great an extent those of a commercial broadcasting station for profit (*Associated Music Publishers* v. *Debs Mem. Radio Fund*, *supra*) and the profits of that part of its business are not required to be devoted to the support of its cultural sustaining program or to the

promotion of social welfare. So far as appears, the income is devoted to the maintenance and improvement of the broadcasting facilities and the enlargement of the sale of its commercial time, and as a result these are improving and growing. It would not be correct to say that the station is operated principally for social welfare and only incidentally as a small business for the support of its welfare activities. One-third in 1935 and probably more now of its allotted time is devoted to its operation as a purely commercial station for a substantial income, and the destination and use of that income is not only in support of its welfare function, but also in support of its commercial function. Other than the payment of its debt and interest to the Forward Association, it does not distribute its profits to that association as if to an affiliated charitable organization. Forward is a creditor which actually owns petitioner's shares, but its exempt status does not influence the petitioner's right to exemption as if petitioner's income were being distributed to Forward for use in a charitable purpose.

The evidence shows a corporation created to fulfill the motive and desires of its founders to promote civic, educational, and cultural purposes, but organized as a business corporation with wide business powers and no charter expression of the welfare purpose of its founders, and actually engaging to a great extent in the operation of a business in a competitive commercial field. Although it has also adhered to the welfare purpose expressed by its founders and may have operated to a greater extent in that field than in the field of business, and although the welfare purpose may predominate in the time and nature of its activities, the evidence does not show a corporation not organized for profit, but operated exclusively or almost exclusively for the promotion of social welfare. To make such a finding would not be supported by the record. The exemption has therefore not been established, and the Commissioner's determination must be sustained.

2. The petitioner makes an alternative claim in the event that it is held not entitled to exemption. It claims that its equity invested capital, which is defined in the statute to include "MONEY PAID IN.— Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital" (Internal Revenue Code, sec. 718 (a) (1)), shall include the $250,000 pledged by Forward and so referred to in its letter of July 15. 1940. We think that the evidence shows that this amount was not money previously paid in for stock, was not paid-in surplus, and was not a contribution to capital. Indeed, it was not money at all. It was only a promise by Forward to advance this amount to petitioner in consideration that petitioner should repay it out of surplus and with the understanding that a failure of surplus would avoid the liability. In 1940 no payment was made, and there was in that year no money on that account actually paid in. Clearly no money had on that account been previously paid in for stock, as paid in sur-

plus, or as a contribution of capital. The first payment of the amount pledged was of $100,000, paid in 1941, the following year, and the next of $150,000 in 1942, and it is difficult to see how these payments can be fitted into the statutory provision, even though Forward, the pledgor, be regarded as the owner of all petitioner's shares. It appears only that Forward promised to make a loan to petitioner, which in the taxable year had not yet been made, and there is no ground upon which to hold that the amount had been invested by Forward in petitioner's capital. The dividends paid credit cases cited by the petitioner are not in point, for they involve dividends declared and credited to the shareholders and withdrawable by them. Here the $250,000 was not definitely placed to the credit of the petitioner so that under the circumstances it could be regarded as constructively paid to petitioner in the taxable year or "previously paid." We see nothing in the scheme of the statute to justify including the pledge in petitioner's equity invested capital. The Commissioner's determination is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARNOLD, *J.*, concurs only in the result.

---

OPPER, *J.*, dissenting: It is not at all clear to me whether the recognized activities of petitioner are such as to bring it within the meaning of a social welfare organization. That presumably involves a consideration of the definition of that term as it is used in section 101 (8). The opinion, however, does not purport to discuss or dispose of any such theory, but, on the contrary, it appears to be assumed that petitioner's ultimate function was civic, educational, and cultural, and hence that it was devoted to objects included in "social welfare."

Once it is further conceded that organization under a business corporation act does not characterize a social welfare enterprise as "organized for profit," it seems to me impossible to find anything in the declared purpose or actual operation of this petitioner to eliminate it from the designated exemption. The basic purpose of "conducting a free public radio forum for the dissemination of liberal and progressive social views" could obviously be promoted only through the medium of the physical facilities of a radio broadcasting station. It is easy to see that the unrestricted realization of that aim might be regarded as more readily feasible if the station were owned outright. An undertaking so designed, however, would naturally entail expenses of considerable magnitude both for capital investment and for maintenance, or even for improvement and expansion. But to say that the use of earnings to those ends indelibly ascribes the profit pur-

pose overlooks the necessity of ascertaining the basic object for which such maintenance and expansion is undertaken.

If the earnings were being reinvested with a view to increasing profits which would eventually become separated from the business and find their way as income to private interests, it might be possible to arrive at the conclusion that the exemption should be denied. But the record is clear and uncontradicted that, as the petitioner is organized and as it is operated, that result is impossible. The figures indicate that operations as a whole have up to now been conducted at a loss, so that apparently profitable years merely make good the deficits of others. But if we speculate that in the future over-all profits may arise, the facts as demonstrated by the record leave only two possibilities open. Either these profits can be devoted to an amplified pursuit of petitioner's basic purpose, possibly by reducing the amount or value of commercial time in favor of educational programs, in which event there would be no profit in the tax sense and the subordination of the commercial to the welfare object would require our recognition, *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578; or the proceeds would pass to the organization which the prevailing opinion views as the one who "owns petitioner's shares," which, being itself exempt, would then endow petitioner with a corresponding immunity. *Roche's Beach, Inc.* v. *Commissioner* (C. C. A., 2d Cir.), 96 Fed. (2d) 776. In neither event could the proceeds possibly inure to private profit. Indeed, even though the modifying language appearing in some other subdivisions prohibiting "the benefit of any private shareholder or individual" were applicable here, which it is not, petitioner's exemption, would, it seems to me, remain inescapable.

In *Roche's Beach, Inc.* v. *Commissioner*, *supra*, the commercial operation of a bathing beach was found to be exempt as a consequence of the devotion of its proceeds to the charitable foundations established in the will of its former owner. Declaring that "the destination of the income is more significant than its source," the court further characterized as "too narrow a view" the "theory that the stated purposes for which a corporation is organized are to be found in its charter." If in addition to the charitable destination of the bathing beach proceeds the ultimate aims of the commercial corporation itself had been to provide beach facilities to the poor without charge, and it had used its commercial income only for improving its facilities, increasing its own charitable operations, and furthering the charitable work of the foundations, the case would obviously have been more favorable to that petitioner. Yet, in principle, that is the situation we have here.

*Anderson Country Club*, 2 T. C. 1238, involved an organization apparently dedicated to the development of physical rather than mental

benefits. Arguments were made there by respondent similar to those advanced here. We said:

Respondent feels that the enhancement of the club's facilities, the retirement of its indebtedness, and the possibility of gain upon dissolution by reason of the receipt and application of the profits to such uses require us to hold that the profits inured to the benefits of the shareholders [who were private individuals]. No authorities are cited to that effect. The record shows that no dividends were ever paid to the shareholders * * * and that dissolution has not been and is not contemplated * * *.

* * * such advantages as these do not constitute the profits inuring to the benefit of a private shareholder, within the meaning of the statute.

I am at a loss to see how the development of this radio station for the greater and more effective presentation of programs of social benefit can be the kind of profit which the statute presupposes. Under circumstances much less favorable the exemption has been granted. *Garden Homes Co.* v. *Commissioner* (C. C. A., 7th Cir.), 64 Fed (2d) 593; *Anderson Country Club, supra; Roche's Beach, Inc.* v. *Commissioner, supra.* Equal treatment of taxpayers similarly situated seems to me to require it here.

KERN, *J.*, agrees with this dissent.