## DEBS MEMORIAL RADIO FUND, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 246.

Circuit Court of Appeals, Second Circuit.

April 12, 1945.

[black bars]

Hugh Satterlee and I. Herman Sher, both of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Section 727 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. § 727, exempts from the excess profits tax corporations exempt under section 101 from the income tax imposed by chapter 1. Debs Memorial Radio Fund, Inc., is a corporation organized in 1928 under the Stock Corporation Law of the state of New York, Consol.Laws N.Y. c. 59, "to engage in the business of broadcasting"; it operates radio station WEVD. It succeeded an unincorporated association organized in 1927 by the name of Debs Memorial Radio Fund to conduct a free public radio forum for the dissemination of liberal and progressive social views. The petitioner claims exemption from federal taxation by virtue of subdivision (8) of section 101, exempting "(8) Civic leagues or organizations not organized for profit but operated exclusively for * * * social welfare, * * *." The Commissioner denied the claimed exemption and assessed an excess profits tax for the year 1940. His determination was sustained by the Tax Court, with two judges dissenting, 3 T.C. 949, and its decision has been brought to this court for review.

The facts are not in dispute. They are set forth in detail in the Tax Court's opinion and will be repeated here only in summary. In 1927 friends of the late Eugene V. Debs organized as a memorial to him an unincorporated membership association by the name of Debs Memorial Radio Fund. The purpose of the association was to conduct a free public radio forum for the dissemination of liberal and progressive social views. A small part-time radio station was acquired and permission was obtained from the Federal Radio Commission to use the call letters WEVD. In the beginning there were no commercial broadcasts, but as expected donations sufficient for operation and rehabilitation of the station failed to materialize, commercial broadcasts sponsored by advertisers were soon begun and were gradually increased. In 1928 the association caused the petitioner Debs Memorial Fund, Inc. to be incorporated under the New York Stock Corporation Law in order to limit the personal liability of the individuals responsible for the operation of station WEVD and to provide a better form of management and control. The corporation's purposes were stated in its certificate of incorporation as broadly as those of any corporation created under the laws of New York to engage in the business of broadcasting; and its by-laws, as originally adopted, authorized the declaration of dividends from surplus profits of the company. Its 100 shares of authorized capital stock, without par value, were issued in exchange for station WEVD and all other assets of the association, subject to its liabilities up to $10,000. The stock certificate was issued to Norman Thomas, chairman of the Debs Memorial Radio Fund for and on behalf of the trustees of that Fund. Mr. Thomas personally paid nothing for the shares.

From its organization in 1928 to the end of 1931 the petitioner's gross income from broadcasting increased from some $4,000 in 1928 to some $22,000 in 1931. It also continued to receive donations, its total gross income in 1931 being $31,727. It was, however, in a condition of financial distress and there was danger that the Federal Communications Commission might cancel the WEVD license. The Forward Association, a New York corporation which the respondent has ruled to be entitled to exemption from federal taxation under section 101(8), came to the petitioner's assistance. Forward agreed to make advances up to the amount of $250,000 upon certain conditions, one of which was that the petitioner's stock should be issued to nominees of Forward to be held as security for repayment of the advances, but only out of surplus after station WEVD "is able to pay all necessary running expenses and earn a surplus." In January 1932, pursuant to this agreement, Forward advanced the sum of $70,000, Norman Thomas surrendered his certificate, and the petitioner issued in its place 24 certificates for four shares each to individuals nominated by Forward. The certificates were assigned in blank and thereafter when any of such individuals died or resigned, new certificates have been issued to other persons nominated by Forward and elected by the shareholders of the petitioner. In Feb-

ruary 1932 the by-law providing for the declaration of dividends was repealed, and new provisions were added to Article VIII as follows:

"2. None of the profits or surplus of the corporation shall be used for distribution as dividends. All profits or surplus shall be used for the improvement of the services of radio stations owned by the corporation or for civic, educational and cultural purposes.

"3. None of the holders of the stock of the corporation shall have the right to assign, transfer or sell the same without the consent of a majority of the rest of the stockholders. He shall be the holder and owner of the stock with the right to vote on it during his life and upon his death the majority of the stockholders shall have the right to designate a successor."

As so amended the by-laws have been in effect ever since. Subsequently Forward advanced additional amounts to the petitioner which were entered on its books in an account payable. As of December 31, 1938 and 1939, the amount owing to Forward in such account was $295,000 and as of December 31, 1940, it was $325,000. The petitioner has always paid interest at six per cent. to Forward on the amounts shown in this account except for the first year or two when interest was forgiven. The interest paid to Forward in 1940 was $17,875.

In addition to the advances already mentioned Forward "pledged" to the petitioner the amount of $250,000, and paid $100,000 thereof in 1941 and the remaining $150,000 in 1942. To the Federal Communications Commission the "pledge" of Forward was reported as a gift or donation and as an asset of the petitioner in order to obtain permission to build a new transmitter.

From 1932 to 1942 the petitioner's gross income, aside from a few small items, has been derived from commercial broadcasting over station WEVD. In each of these years, except 1936 and 1937, down to 1939 its federal income tax returns showed no net income but a deficit. The following table gives the figures for 1939 to 1942 inclusive:

| Year | Gross income from broadcasting | Commissions paid | Net Income |
|------|-------------------------------|------------------|------------|
| 1939 | $284,294.41 | $52,855.47 | $ 9,221.69 |
| 1940 | 323,834.16 | 52,955.36 | 30,700.57 |
| 1941 | 290,385.69 | 55,631.10 | 6,053.68 |
| 1942 | 294,466.11 | 50,411.44 | 7,449.18 |

Despite the net income in recent years its books show an operating deficit at the end of 1942 of $37,148.42. Its assets as of the same date are shown as $592,443.49. They were acquired with funds in part borrowed from and in part donated by Forward.

The petitioner's sole activity has always consisted of the ownership and operation of radio station WEVD. It sells time to commercial sponsors by solicitation and by presenting salable programs. In 1940 it had in its employ four salesmen who were paid on a commission basis. It also sold time through sales and advertising agencies. In 1935 WEVD had 58 hours a week of which 67 per cent. were devoted to sustaining programs and 33 per cent. to commercial broadcasting. In 1940 the petitioner had 110 hours of broadcasting time a week, 50 hours of which were after 6 P. M. The precise distribution of this time between commercial and non-commercial programs does not appear. The petitioner still has considerable time to sell and its salesmen are attempting to sell more time. Whatever time is not sold must be filled in with sustaining programs, as the Commission requires all time to be filled. Its sustaining programs are educational, civic and cultural in nature. Sustaining programs are such as create listening appeal, and thus they attract advertisers or sponsors of commercial programs. The proportion of commercial time has increased. Some of the increase in petitioner's gross income is due to an increase in rates resulting from an increase in time and power of station WEVD. The most important broadcasting hours are in the evening and there is uncontradicted testimony that the petitioner broadcasts only educational, civic and cultural programs in the evening hours. Since its organization no salaries or other compensation has been paid to any of its officers, directors or shareholders. Nor has it ever paid any dividend or made any other distribution to shareholders.

To be entitled to exemption under § 101 (8) the petitioner must satisfy three conditions: It must be (1) a "civic league or organization", (2) "not organized for profit" and (3) "operated exclusively for the promotion of social welfare." The statute contains no definition of "social welfare", but since 1924 the relevant interpretative

Treasury regulation [1] has read in substantially its present form:

"Civic Leagues and Local Association of Employees.—Civic leagues entitled to exemption under section 101(8) comprise those not organized for profit but operated exclusively for purposes beneficial to the community as a whole, and, in general, include organizations engaged in promoting the welfare of mankind, other than organizations comprehended within section 101 (6). * * *"

Despite the respondent's contention to the contrary, we think the Tax Court held that the petitioner satisfied the first of the three statutory conditions for exemption. Judge Sternhagen's opinion adopts "the propositions that * * * the corporation may properly be regarded as a civic organization." The opinion also states that the petitioner's predecessor, the unincorporated association, "was organized * * * with the idea of conducting a free public radio forum for the dissemination of liberal and progressive social views"; that the petitioner was incorporated "in order to limit the personal liability of the individuals responsible for the operation of WEVD and to provide a better form of management and control," and that it has "adhered to the welfare purpose expressed by its founders and may have operated to a greater extent in that field than in the field of business." We are in accord with the holding that the petitioner is a "civic organization".

Exemption was denied for the reason that despite its social welfare purpose the petitioner failed to meet the second and third conditions for exemption. As to the second condition, the Tax Court held that the evidence fails to show that the corporation was "not organized for profit." In so far as this conclusion was based on the ground that the corporate charter was silent as to the social welfare purpose, we think it inconsistent with this court's decision in Roche's Beach, Inc. v. Commissioner of Internal Revenue, 2 Cir., 96 F.2d 776. As we there held, the adverse implication arising from incorporation un-

der the business corporation law may be explained by extrinsic evidence showing that the actual purpose of organizing the corporation was to promote a charity exempted from taxation by section 101(6). See also Anderson Country Club, Inc. v. Commissioner, 2 T. C. 1238. In the case at bar the implication of a profit purpose was negatived not only by the founders' objective of a free, public radio forum but also by the amendment of the by-laws to prohibit the distribution of profits to shareholders. The respondent's brief states that he has refused to follow the Roche's Beach decision. See G. C. M. 23062, 1942—1 Cum. Bull. 103. But we have recently adhered to it in Bohemian Gymnastic Association Sokol v. Higgins, 2 Cir., 147 F.2d 774, and shall continue to do so until instructed otherwise by final authority. The rule of liberal construction applied in those cases in favor of exemption under section 101(6) and its counterpart in section 1426(b) (8) should for similar reasons be applied in favor of social welfare organizations under section 101(8). Nor is it fatal to exemption that substantially all of the petitioner's income is derived from commercial activities since the purpose of making profits has been to enable it to broadcast its educational, civic and cultural programs without charge. In this respect the situation is like that of Roche's Beach, Inc., and the Bohemian Association. In Hanover Improvement Society, Inc. v. Gagne, 1 Cir., 92 F.2d 888, a village improvement association was held exempt under subdivision (8) despite the fact that it leased and operated at a profit a motion picture theatre and used the profits not only for village improvements but also to accumulate a fund for the purpose of erecting a new theatre building when its present lease should expire. Similarly in the case at bar the fact that the petitioner may use some of the profits derived from commercial broadcasts for improvement of its radio service should not deprive it of exemption since its ultimate purpose is the maintaining of a free public forum for educational, cultural and civic purposes without financial gain to any individual. Upon the facts as found

[1] Art. 519, Treas. Reg. 65 (1924); Art. 519, Treas. Reg. 69 (1926); Art. 529, Treas. Reg. 74 (1928); Art. 529, Treas. Reg. 77 (1932); Art. 101(8)-1, Treas. Reg. 86 (1934); Art. 101(8)-1, Treas. Reg. 94 (1936); Art. 101(8)-1, Treas. Reg. 101 (1938); Sec. 19.101(8)-1, Treas. Reg. 103 (1940); Sec. 29.101(8)-1, Treas. Reg. 111 (1943).

For the liberal manner in which section 101(8) has been applied, see 6 Mertens, The Law of Federal Income Taxation § 34.29.

by Tax Court we think the petitioner must be held "not organized for profit."

■ The third condition for exemption is that the petitioner be "operated exclusively for the promotion of social welfare." In considering this feature of the case the Tax Court conceded that a strict application of the word "exclusively" is not required, but held that the extent of the petitioner's operation of its radio station for profit on an ordinary commercial basis prevents exemption even under a liberal application of the statutory language. In so holding we think the Tax Court construed the statute too narrowly. In Roche's Beach, Inc. v. Commissioner, supra, all of the corporation's income was derived from commercial activities, but since its ultimate destination was charitable we held that the corporation was operated exclusively for charitable purposes within section 101(6). Likewise in the Bohemian case, supra, the fact that a very large proportion of the taxpayer's income was so derived was held not to preclude exemption under section 1426(b) (8) of the Internal Revenue Code. See also Commissioner of Internal Revenue v. Kensico Cemetery, 2 Cir., 96 F.2d 594; Appeal of Unity School of Christianity, 4 B. T. A. 61; Sand Springs Home v. Commissioner, 6 B. T. A. 198; Forest Lawn Memorial Park Assn., Inc. v. Commissioner, 45 B.T.A. 1091; United States Lawn Tennis Assn. v. Commissioner, Aug. 11, 1942, 47 B.T.A. 1044. In each of these cases, the taxpayer derived very large revenues from business activities but nevertheless was granted exemption under a clause similar to or identical with the one now under consideration. Consistently with these authorities we think the petitioner was "operated exclusively for the promotion of social welfare." The purpose of its commercial broadcasts has been to obtain funds to enable it to broadcast its educational, civic and cultural programs without charge. Its aim has been only to make station WEVD self-supporting, and up to the end of 1940 the expenses of operation have exceeded receipts by some $37,000.

In our opinion the petitioner satisfies the three conditions for exemption which § 101 (8) imposes. Accordingly the decision of the Tax Court is reversed.

CHASE, Circuit Judge (dissenting).

In order to be entitled to the exemption it claimed, the petitioner had to show clearly that it came within some statute which gave it the advantage of running a radio broadcasting station income tax free. Exemption statutes should be strictly construed. Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113; Helvering v. Northwest Steel Mills, 311 U. S. 46, 61 S.Ct. 109, 85 L.Ed. 29. At least that much is required for the protection of the revenue. But that is not all. A taxpayer who claims the privilege of preferred treatment by way of exemption must prove himself clearly within a statute not only creating the privilege but creating it for him. Compare New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

Compliance with such requirements imposed upon this petitioner the burden of proving in the Tax Court that it was (1) a civic league or organization, (2) not organized for profit, and (3) that it was operated exclusively for the promotion of social welfare. Whether or not the Tax Court found in its favor as to (1) above, it seems to me clear that we cannot hold that that court was compelled on the evidence to find in its favor as to (2) and (3) and, consequently, committed legal reversible error when it failed to find both (2) and (3). Its failure amounted to saying that upon weighing all the evidence on the subjects it found that it did not preponderate in favor of the petitioner on either point. The following extract from the opinion is illuminating. "So far as appears, the income is devoted to the maintenance and improvement of the broadcasting facilities and the enlargement of the sale of its commercial time, and as a result these are improving and growing. It would not be correct to say that the station is operated principally for social welfare and only incidentally as a small business for the support of its welfare activities. One-third in 1935 and probably more now of its allotted time is devoted to its operation as a purely commercial station for a substantial income and the destination and use of that income is not only in support of its welfare function but also in support of its commercial function."

That the finding of the Tax Court to the above effect does have the support of substantial evidence appears to be clear enough. Consequently, there was evidence legally sufficient for administrative action. We may not go beyond a determination of

that and weigh the evidence as a whole. Webre Steib Co. v. Commissioner, 65 S.Ct. 578; Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L. Ed. 248.

I think the decision should be affirmed.