CONSUMER–FARMER MILK COOPERATIVE, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 9, Docket 21617.

United States Court of Appeals Second Circuit.

Argued Oct. 6, 1950.

Decided Dec. 27, 1950.

Jacob Rabkin and Mark H. Johnson, New York City, for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and Sumner M. Redstone, Special Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the petitioner is exempt from liability for income tax under section 101(8) of the Internal Revenue Code, 26 U.S.C.A. § 101(8). If it is, section 727a of the Code, 26 U.S.C.A. § 727(a), grants exemption from excess profits tax. The Tax Court held it was not exempt under section 101(8) and accordingly determined the deficiencies now under review, $439.41 in declared value excess profits tax and $23,-821.32 in excess profits tax. They are admittedly correct if denial of exemption was right. The year involved is the taxable year ending September 30, 1943.

Section 101(8) exempts from income tax "Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare * *." The Tax Court concluded that the taxpayer did not satisfy these requirements for two reasons: It was of opinion (1) that upon dissolution of the corporation any surplus could be distributed to its members; and (2) that the distribution of patronage divi-

dends was a distribution of profits to the members who received them.

The Commissioner has apparently abandoned the first ground; at least no mention of it is made in his brief. Probably this is because after the Tax Court's decision, a representative declaratory judgment action was instituted in the Supreme Court of New York by members of the corporation and a judgment was obtained declaring that the corporation "is a charitable corporation with respect to disposition of its assets upon dissolution"; that the members have no proprietary or equitable interest in its assets upon dissolution; that the by-laws of the corporation may not be amended to authorize the distribution of assets to its members upon dissolution; and that upon dissolution "its assets must be distributed in accordance with the doctrine of *cy pres.*" Attinson v. Consumer-Farmers Milk Cooperative, Inc., 197 Misc. 336, 94 N.Y.S.2d 891, 894. This construction of the taxpayer's charter is, we think, controlling upon us that any surplus arising from failure of consumer members to collect patronage dividends cannot, upon dissolution of the corporation, be distributed to producers or consumers who are then its members. We turn therefore to the second ground of decision relied upon by the Tax Court.

The taxpayer is a cooperative non-stock corporation organized pursuant to the New York Cooperative Corporations Law, McK. Consol.Laws, c. 77. Any person is eligible to become a consumer member by paying a membership fee of 25 cents, but to remain in good standing a consumer member must patronize the cooperative to the extent of a minimum of $5 per year. Any farmer, who is a member of a farmers' association from which the cooperative obtains any of the milk it distributes, may become a producer member upon paying a membership fee of 25 cents and may continue as such as long as his farmers' association continues to supply milk to the cooperative. Membership fees for both consumer and farmer members may be paid either in cash or by deduction from patronage dividends declared by the taxpayer. The Tax Court made detailed findings of fact with respect

to the reasons for the taxpayer's creation, the manner in which it has conducted business and its activities of an educational and social welfare character. As stated in its brief, the taxpayer does not disagree with the Tax Court's findings. Without repeating them we shall assume familiarity with the facts and shall refer only to such as seem necessary to clarify the subsequent discussion.

To qualify for exemption under section 101(8) a corporation must be a civic league, not organized for profit and operated exclusively for the promotion of social welfare. The Commissioner contends that the taxpayer can meet none of these three conditions. The statute contains no definition of civic league. The Regulations have construed the term to include "organizations engaged in promoting the welfare of mankind."[1] In so far as the operations of the taxpayer are directed to serving the economic welfare of its members—one of the purposes stated in its by-laws—its activities have a much more limited objective than promoting the welfare of mankind. But we need not decide that the taxpayer is not a civic league.[2] Even assuming that the taxpayer may be classified as a civic league, it must still meet the other two conditions for exemption.

The Tax Court found as a fact that the taxpayer was organized for a profit-making purpose despite the statement in its certificate of incorporation that it was formed "for mutual help, not conducted for profit." It competes vigorously with other milk distributors; and its brief concedes that all of its operations are intended to return a fair profit, without any price cutting be-

low cost. How successful it has been in making profit is evidenced by the fact that starting in 1938 with a borrowed capital of $6,000, its balance sheet as of September 30, 1943 shows assets totaling more than $138,000 and a net worth of more than $15,000. This result has been attained in large part by reason of the way it has dealt with consumer dividends. After its first full year of operation the board of directors decided to pay patronage dividends of 15 cents per 100 quarts of milk purchased by consumers and 7½ cents per 100 quarts of milk furnished by farmers. The same dividend rates have been continued in subsequent years. Consumer dividends are declared on the total volume of the taxpayer's sales, but a consumer patron can claim his dividend only if he turns in printed vouchers, detached from milk containers, evidencing purchases of at least $5 in the dividend year. Unclaimed consumer dividends are transferred to the general reserve fund one year after the declaration date. In actual practice only a small percentage of consumer dividends are ever claimed and paid.[3]

It is true that a claim to exemption under section 101(8) is not barred merely because profit is derived from commercial operations provided the ultimate destination of the profit is charitable.[4] But since profit must be directed to a charitable purpose, the pivotal issue in this case is whether the rebate distributions to producer and consumer members of the taxpayer can be considered to be charitable contributions made exclusively for promotion of social welfare. We agree with the Tax Court that they cannot be so regarded. Petitioner contends that the distribution of

1. Treas.Reg. 111, sec. 29.101(8)-1, as amended by T.D. 5458, 1945 Cum.Bull. 45.

2. Compare United States v. Pickwick Electric Membership Corporation, 6 Cir., 158 F.2d 272, 276 where a cooperative organized in the interest of rural electrification and of furnishing electricity at more reasonable rates than those charged by private companies was allowed exemption as a civic league.

3. The record shows that the total amount of dividends declared payable to consumers for the fiscal years 1939 to 1943 in-

clusive was $39,922.53 and of this amount only $3,050.25 was paid. In the taxable year only $871.05 was claimed and paid out of $25,920.88 set aside for consumer dividends.

4. Debs Memorial Radio Fund v. Commissioner, 2 Cir., 148 F.2d 948; see Trinidad v. Sagrada Orden, 263 U.S. 578, 581, 44 S.Ct. 204, 68 L.Ed. 458; Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9, 10; Commissioner v. Orton, 6 Cir., 173 F.2d 483. Compare Industrial Addition Ass'n v. Commissioner, 6 Cir., 149 F.2d 294.

patronage dividends to members does not mean that the cooperative was organized for profit within the prohibition of section 101(8), and that the net earnings of the cooperative are not "profit" in the sense in which that word is used in the subsection. The argument is grounded on the theory that the price at which the cooperative buys from or sells to its members is merely tentative; that the patronage dividend is a refund increasing or decreasing, as the case may be, such tentative price; that the cooperative is obligated by section 73 of the New York Co-operative Corporations Law to make such refunds; and consequently they are not true income distributions. Reliance is placed upon administrative rulings of the Treasury, made without express statutory authorization, which allow patronage dividends to be deducted from gross income of both producer and consumer cooperatives.[5]

Without passing on the correctness of these rulings and the decisions which have approved them, we do not find them persuasive that this taxpayer is entitled to exemption under section 101(8).[6] The phrase "not organized for profit" is conjunctively linked with the phrase "but operated exclusively for the promotion of social welfare". The necessary implication is that the organization's net income must be considered "profit" within the prohibition of section 101(8) unless the income is devoted exclusively to promotion of social welfare. It is for this reason that a consideration of the taxpayer's dominant and controlling purpose is necessary. If that purpose, as in the present case, is primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare, then net income must be characterized as "profit" for purposes of section 101(8).

We think that the petitioner's self-regarding purpose, as evidenced by payments of patronage dividends to its members, so far over-shadows its incidental charitable and educational purposes as to make relief from taxation unjustifiable. Petitioner's by-laws direct the board of directors to "apportion the net earnings from the operation of the business" for the following purposes: (a) at least 10% shall be set aside as a general reserve fund; (b) at least 5% shall be used for cooperative education; (c) special reserve funds may be established; and (d) patronage dividends shall be payable to consumer members and to producer members (farmers) in the ratio of two to one. The sums set aside for cooperative education in each of the fiscal years 1939 to 1942 were insignificant: in 1939, $350.81; in 1940, $346.82; in 1941, $170.38; in 1942, $147.02. Thereafter the taxpayer added no funds to this account, for the reason, as stated in its brief on appeal, that it decided to charge educational expenses to general operating expenses.[7] Through its officers the taxpayer has interested itself in many aspects of the milk industry and has sought to improve that industry in ways recited in the Tax Court's opinion. Concededly it has been engaged to some extent in promoting social welfare. But it has not been exclusively so engaged. Where only a small portion of the cooperative's net income is used for education or other public purposes, it is difficult to find sufficient public dedication to justify relief from taxation. To qualify for exemption, profit derived from commercial activities must not only be incidental to the ultimate charitable purpose; it must also be devoted to that purpose. Laudable as some of the cooperative's purposes may be, the phrase "social welfare" would be unrecognizably distorted

5. See G.C.M. 17895, Cum.Bull. 1937-1, 56; I.T. 3208, Cum.Bull. 1938-2, 127; Fruit Growers Supply Co. v. Commissioner, 21 B.T.A. 315, affirmed 9 Cir., 56 F.2d 90; San Joaquin Valley Poultry Producers Ass'n v. Commissioner, 9 Cir., 136 F.2d 382; Midland Coop. Wholesale v. Commissioner, 44 B.T.A. 824; United Coop. Inc., 4 T.C. 93; Farmers Coop. Co. v. Birmingham, D.C.Iowa, 86 F. Supp. 201.

6. See "Taxable Income of Cooperatives" by Prof. Roswell Magill and Mr. Allen H. Merrill, 49 Mich.L.Rev. 167.

7. The Tax Court made no finding as to the amount of educational expenses during the taxable year and the taxpayer's brief gives no figures as to this.

if stretched to include activities which result primarily in financial gain to individual members. It is not enough that a taxpayer's activities benefit the industry; nor is it enough that the enterprise incidentally devotes its efforts to charitable purposes for which exemption would be allowed if not combined with another substantial non-exempt purpose.[8]

In support of its claim to exemption the taxpayer relied heavily on the decision of the Sixth Circuit in United States v. Pickwick Electric Membership Corp., 6 Cir., 158 F.2d 272. There a cooperative membership corporation organized to provide low cost electricity in rural communities, in some of which electricity was not previously available, was allowed exemption under section 101(8) despite the fact that its members received benefits in the form of patronage refunds or reduced rates. The Commissioner urges that the case is distinguishable because, as the court noted, 158 F.2d at page 276, whatever small profit was made "was only a tentative one and so closely related to a readjustment of rates that it was not an actual profit in the real meaning of the word over the longer period of time", and because "there was no cash distribution", 158 F.2d at page 277. Unless these differences are sufficient to distinguish it from the case at bar we must respectfully decline to follow it.[9]

█ Finally it should be noted that essentially the taxpayer is a farmers' cooperative, since the patronage dividends paid to consumer members are so insignificant as to be negligible. Section 101(12) grants exemption to farmers' cooperatives on terms therein set forth. Concededly the taxpayer does not meet those terms; and it makes no claim to exemption thereunder. The detailed classification of section 101 suggests that when Congress set up in subdivision (12) the conditions on which a farmers' cooperative might gain exemption,

this was intended as the exclusive subdivision for such a cooperative.[10] This question is mentioned merely by way of caveat; it is unnecessary to decide it. Even on the assumption that the taxpayer might qualify for exemption under subdivision (8), we hold for reasons already stated that it failed to satisfy the requirements.

Order affirmed.

---

8. Cf. Better Business Bureau v. United States, 326 U.S. 279, 283, 284, 66 S.Ct. 112, 90 L.Ed. 67.

9. For a criticism of the decision see 6 Mertens, Law of Federal Income Taxation, 1948 Rev. ed., § 34.29.

10. See Keystone Automobile Club v. Commissioner, 3 Cir., 181 F.2d 402, 405; contra, United States v. Pickwick Electric Membership Corp., 6 Cir., 158 F.2d 272, 276; Chattanooga Auto Club v. Commissioner, 6 Cir., 182 F.2d 551, 555.