**AMERICAN WOMEN BUYERS CLUB, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Nov. 29, 1963.

Hess, Mela, Segall, Popkin & Guterman, New York City, for plaintiff. Abraham S. Guterman, Allan Ditchik, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for defendant. Robert Arum, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

This is a suit to recover $1,540.38 in refund of federal income taxes paid by the plaintiff-taxpayer, American Women Buyers Club, Inc. (hereinafter taxpayer) for the calendar year 1961. The "taxpayer's" claim is based upon its allegation that it is exempt from federal income tax pursuant to Section 501(c) (4), Int.Rev.Code of 1954, as a civic organization "not organized for profit but operated exclusively for the promotion of social welfare."

The case was tried to the court without a jury. After hearing the testimony of the parties, examining the exhibits, the pleadings, the briefs and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Taxpayer is a membership corporation organized and existing under and by virtue of the Membership Corporations Law of the State of New York. (Ex. 1A)

2. The Certificate of Incorporation of the taxpayer provides in pertinent part:

"* * *

"2. The purposes for which this corporation is formed are the following:

"(a) To promote the general good and welfare of Ready-To-Wear buyers throughout the country.

"(b) To promote, conduct and sponsor means of encouraging friendly and social intercourse among members of the Club, and among members of the buying profession generally.

"(c) To assist in maintaining a spirit of cooperation not only among Ready-To-Wear buyers, but among their professional associates.

"(d) To give aid and assistance to its members in case of distress or bereavement, and to accumulate funds for that purpose.

"(e) Any benefits which shall be conferred upon the members by the organization, shall be wholly voluntary." (Ex. 1A)

3. The Constitution of the American Women Buyers Club is prefaced by the statement, "This Constitution is the personal property of the American Women Buyers Club and of the member to whom it is issued. It may not be publicly discussed nor its contents publicised." (Ex. 1B)

4. The taxpayer's membership is open to and consists of women with at least three years experience as principal buyers of ready-to-wear accessories or kindred lines in the United States. Prospective members must meet the standards and requirements of the taxpayer, which include a lack of absenteeism on the job as well as a good reputation in the industry. (SM 4) [1] Also, the prospective applicant must be under the age of 45. (SM 5)

5. Most of the members of the taxpayer are from the Metropolitan Area. (SM 6) The membership of the taxpayer comprises approximately 10% of all the women buyers in the ready-to-wear industry in the Metropolitan Area. During the year 1961, the membership of the taxpayer numbered 222. (SM 34)

---

1. References with the prefix "SM" are to the stenographer's minutes of the trial.

6. Of the annual number of applicants for membership, approximately 15% are rejected as not meeting the standards of membership.

7. The taxpayer's income for the calendar year 1961 consisted of the following:

| Income | | |
|---|---|---|
| Dues | | $ 4,230.00 |
| Initiation | | 130.00 |
| Interest on Bonds | | 1,285.00 |
| Interest on Savings | | 1,151.52 |
| Additional Income 1961 Journal | 3,840.00 | |
| Less: Additional Expense | 1,041.78 | 2,798.22 |
| Income—1962—Journal—Estimated | 15,126.00 | |
| Less: Estimated Expense | 2,500.00 | 12,626.00 |
| Income from Dinner | 18,530.00 | |
| Less: Expenses | 18,629.39 | − 99.39 (LOSS) |
| Total Income | | $22,121.35 |

8. The taxpayer's expenses for the calendar year 1961 consisted of the following:

| Total Income Carried Forward | | $22,121.35 |
|---|---|---|
| Expenses | | |
| Unemployment Benefits | | $ 2,025.00 |
| Sick Benefits | | 2,520.00 |
| General Meetings | | 1,782.00 |
| Board & Committee Meeting | | 807.37 |
| Installation | | 2,326.49 |
| Secretary | | 2,100.00 |
| Welfare Committee Expense | 305.72 | |
| Less: Contributions | 30.00 | 275.72 |
| Social Security | | 186.00 |
| Stationery, Printing, Postage & Telephone | | 453.03 |
| Contributions | | 200.00 |
| Tax Attorney | | 1,000.00 |
| Audit | | 150.00 |
| Sundries | | 7.10 |
| Bad Debts | | 190.00 |
| Total Expenses | | $14,022.71 |
| Net Surplus | | $ 8,098.64 |

The income and expenses for the year 1961 are fairly typical of receipts and expenditures in a normal year.

9. The main source of the taxpayer's income is derived from advertisements sold to manufacturers in connection with

the publication by the taxpayer of its annual journal. (SM 10) See Finding No. 7)

10. Ten meetings for members are held during the year. (SM 33) In connection with these meetings taxpayer incurs expenses in providing refreshments for its members. (SM 35) (See Finding No. 8) In addition, board and committee meetings are held by the taxpayer. These board and committee meetings are dinner meetings, the cost of which is borne by the taxpayer. (SM 34) (See Finding No. 8) There is also an annual installation of officers, the cost of which is borne by the taxpayer. The total expense for these items in 1961 was $4,915.86.

11. The taxpayer's activities are conducted through its board of governors, officers and committees. None of its officials receives compensation for their services. (SM 8)

12. The taxpayer pays sick benefits and unemployment benefits to members only. (SM 22) During the year 1961, $2,520 was paid by the taxpayer to 18 of its members in the form of sick benefits and $2,025 was paid by the taxpayer to 10 members in the form of unemployment benefits. (Stip.) The total amount paid in benefits during 1961, $4,545, represents the average amount which would be paid in a typical year. (SM 40–41)

13. The benefits payable to a member in any year, without approval of the general membership, are as follows: sick benefits—up to $350 during a 10-week period or, in the event the member is hospitalized, up to $450; unemployment benefits—up to $375 over a 15-week period; emergency benefits for sick or distressed members—up to $625. Any additional benefits must be approved at a meeting of the general membership. (Ex. 1B)

14. The taxpayer performs services for its members. It helps members get work when they are unemployed through its Employment Committee which contacts stores and other buying offices.

(SM 24, 25, 32) At its meetings the taxpayer has lectures devoted to helping members in their various positions. In addition, the taxpayer also occasionally assists its members in locating items of merchandise to fill requisitions in connection with their positions. (SM 28) This exchange of information helps to make the members better and more effective buyers. The taxpayer also publishes a news sheet called "Chit Chat," which furnishes its members with notices of available positions in the industry. (SM 36–37)

15. During the year 1961, the taxpayer's total contributions to charitable organizations totalled $200. (SM 43) In 1962, the total was $900, while in 1960 it was $600. (SM 44)

16. As of December 31, 1961, the taxpayer had an accumulated surplus of $92,587.15. (Ex. 1E)

## DISCUSSION

This suit is based on the taxpayer's contention that it is exempt from federal income tax, pursuant to Section 501(c)(4) of the Internal Revenue Code of 1954, which provides:

"(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \*

"(4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, \* \* \*."

Treasury Regulation 1.501(c) (4)–1 defines a civic league or organization operated exclusively for the promotion of social welfare as:

"1.501(c) (4)–1. Civic organizations and local associations of employees. (a) Civic organizations. (1) In general. A civic league or organization may be exempt as an organization described in section 501(c) (4) if:

"(i) It is not organized or operated for profit; and

"(ii) It is operated exclusively for the promotion of social welfare.

"(2) Promotion of social welfare. (i) In general. An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements. * * *"

It is evident that Section 501(c) (4) provides three requirements in order to obtain an exemption. First, the taxpayer must be a civic league or organization; second, it must not be operated for profit; third, it must be operated exclusively for the promotion of social welfare. Cf. Debs Memorial Radio Fund, Inc. v. Commissioner, 148 F.2d 948 (2 Cir. 1945). Simply stated, the issue here is whether the taxpayer meets these three requirements for exemption.

It is elementary that " * * * a taxpayer must bring himself substantially within the terms of a statute granting exemption from taxation to claim the benefit it affords. Madison Newspapers, Inc. v. Comm'r., 253 F.2d 129, 130 (7 Cir. 1958); Producers' Creamery Co. v. United States, 55 F.2d 104 (5 Cir. 1932)." Commissioner of Internal Revenue v. Lake Forest, Inc., 305 F.2d 814, 817 (4 Cir. 1962). Moreover, plaintiff has "no natural right to tax exemption, but rather a Congressional balm granted because losses in tax revenues" are deemed compensated for by the value of charitable work. Erie Endowment v. United States, 316 F.2d 151, 153 (3 Cir. 1963).

Section 501(c) (4) and Treas. Reg. 1.501(c) (4) do not define the term "civic league or organization." However, it is clear that the taxpayer, while concededly an organization, is not a civic organization. In United States v. Pickwick Electric Membership Corp., 158 F. 2d 272, 276 (6 Cir. 1946) a civic organi-

zation was described as embodying "the ideas of citizens of a community cooperating to promote the common good and general welfare of people of the community." In Commissioner of Internal Revenue v. Lake Forest, Inc., 305 F.2d 814, 818 (4 Cir. 1962) a civic organization was described as being "a movement of the citizenry or of the community." Clearly, the taxpayer does not qualify as a civic organization under these definitions. It is not " * * * a community movement designed to accomplish community ends." Erie Endowment v. United States, 316 F.2d 151, 156 (3 Cir. 1963).

From the Findings of Fact I am forced to conclude that the plaintiff-taxpayer is not operated exclusively for the promotion of social welfare since (a) only a limited number of women buyers are admitted to the club; (b) the services rendered, such as employment facilities, information about sources of supply, lectures, dinners, installations, publications, etc., are all primarily, if not exclusively, for the purpose of rendition of services to the members; (c) the sick benefits, the unemployment benefits and other financial aids are solely for members and not for the public or for the general welfare of the people of the community; (d) the payments to charities are only an incident in the operation of taxpayer. As the facts make evident, in 1961, a typical year, the taxpayer expended more money in expenses for meetings than it did in paying sickness and unemployment benefits.

Treasury Regulation 1.501 (4)–1 makes clear that "an organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community." The taxpayer falls far short of this definition. The fact that the taxpayer does give sick and unemployment benefits, a worthwhile undertaking, does not entitle it to exemption. The taxpayer attempts to qualify for exemption by interpreting and con-

struing various Internal Revenue Department rulings in which exemption was granted to various taxpayers. See Rev. Rul. 55–495, 1955–2 Cum.Bull. 259; G.C.M. 19028, 1937–2 Cum.Bull. 125; Rev.Rul. 55–406, 1955–1 Cum.Bull. 73. However, even a cursory examination of the above rulings reveals a substantial difference in the scope and breadth of services rendered by those taxpayers compared to the present taxpayer. In addition, this court is not bound by the rulings of the Treasury Department to other taxpayers. Rather, this court must follow the case law as reflected by the decisions in Commissioner of Internal Revenue v. Lake Forest, supra; Erie Endowment v. United States, supra; United States v. Pickwick Electric Membership Corp., supra.

In the last analysis, taxpayer's operations are not exclusively of the type the statute demands. Aside from the taxpayer's sick and unemployment benefits, other purposes are envisioned by the taxpayer. As indicated, membership affords an instrument whereby a member can make contacts, improve her abilities and socialize with other members of her profession.

Since the taxpayer has failed to meet the requirements of being a civic organization, organized exclusively for the promotion of social welfare, it is unnecessary to determine whether or not it is organized for profit.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter of this action, 28 U.S.C. § 1346.

2. The taxpayer does not qualify for exemption under Section 501(c) (4) of the Internal Revenue Code of 1954 since it is neither a civic organization nor is it operated exclusively for the promotion of social welfare. Commissioner of Internal Revenue v. Lake Forest, Inc., 305 F.2d 814 (4 Cir. 1962); Consumer-Farmer Milk Cooperative, Inc. v. Commissioner, 186 F.2d 68 (2 Cir. 1950),

cert. denied 341 U.S. 931, 71 S.Ct. 803, 95 L.Ed. 1360 (1951).

3. Accordingly, the complaint must be dismissed on the merits with prejudice and costs.

Settle judgment on notice.