**MONTEREY PUBLIC PARKING CORPORATION, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 48291.

United States District Court, N. D. California.

Dec. 14, 1970.

Kenneth Ehrman of Ehrman & Flavin, Monterey, Cal., for plaintiff.

John Youngquist, Asst. U. S. Atty. for James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION

WOLLENBERG, District Judge.

This is an action for a refund of moneys paid as corporation income taxes for the years 1964, 1965, and 1967. The case was tried as a short cause under Local Rule 108; the parties entered into a stipulation of relevant facts; witnesses were heard; and the matter has been taken under submission for final decision on the merits.

The aforementioned Agreed Statement of Facts, filed on July 10, 1970, is hereby adopted as the Court's findings of fact in the instant case. The parties have agreed that the questions for the Court are whether or not plaintiff corporation qualifies for exemption for federal income tax under § 501(c) of the Internal Revenue Code of 1954, and if not, whether a certain investment credit claimed for 1964 was correctly determined by defendant. Stipulation #39.

The Court finds that it need not reach the issue of the investment carryover in view of its determination that plaintiff corporation qualifies for exemption from federal income taxes under 26 U.S.C. § 501(c) (3), (4).

Most briefly summarized, the above mentioned stipulation indicates that plaintiff is a non-profit California corporation operating solely in the city of Monterey. It was formed in late 1962 "for the purpose of constructing and operating a public automobile off-street parking facility". Prior to plaintiff's incorporation, there had been considerable discussion by city authorities and private groups concerning the need for parking facilities in the central business district of Monterey. Like many older cities, Monterey was faced with the impending decay of center-city neighborhoods rendered crowded and uncomfortable by narrow streets, increasing vehicular traffic, and a lack of off-street parking facilities. Monterey's municipal government, in the opinion of many, could not expeditiously finance and construct needed parking facilities, and as a result several private business and professional persons organized plaintiff corporation. Plaintiff negotiated leases, demolished certain structures, and put up a parking lot which is open to the use of the public. A validation stamp system has been set up, allowing the rental of parking spaces for some seven cents per hour less than cash rates. Any business or private person can take advantage of these special rates.

The income which defendants claim should be the subject of taxation arose in 1964, 1965, and 1967. By far the largest yearly income to plaintiff was that realized in 1964, when it leased back a portion of its lot to the Monterey Savings and Loan Association. The consideration for this arrangement totalled some $30,000, and the parties agree that this is a "non-recurrent type of income". Agreed Statement of Facts, #33. "Taxable" income for the other relevant years was $2,462.47 (1965) and $1,725.68 (1967). *Ibid.*

Plaintiff does not argue that it is an exempt organization as defined in 26 U.S.C. § 501(c) (6), i. e. the section referring to "[b]usiness leagues, chambers of commerce, real-estate boards, boards of trade, [etc]". Rather, plaintiff contends that its right to exemption may be grounded in either § 501(c) (3) (a corporation organized exclusively for religious or charitable purposes) or § 501 (c) (4) (a civic organization not organized for profit but operated exclusively for the promotion of social welfare).

Section 501(c) (4) of the Internal Revenue Code provides an exemption from federal income taxes for "[c]ivic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare". Plaintiff's initial application for exemption was based on this section. The Internal Revenue Service denied this application, however, basing itself upon applicable regulations interpreting the key phrase, "not organized for profit". Said regulations bar exemption for organizations whose "primary activity is * * * carrying on a business with the general public in a manner similar to organizations which are operated for profit". Regulations, § 1.501(c) (4)–1.

Section 501(c) (3) of the Code provides an alternate basis for organizational exemption from income taxes. "Corporations * * * organized and operated exclusively for * * * charitable * * * purposes * * * no part of the earnings of which inures to the benefit of any private shareholder or individual [shall be exempt under § 501(a)]." Plaintiff did not raise this ground for exemption during proceedings before the Internal Revenue Service. The government, however, has stipulated that the Service has determined that plaintiff qualifies for exemption under *none* of the subdivisions of section 501. Agreed Statement of Facts #38.

Defendant's opposition to the § 501(c) (3) claim does not center on plaintiff's asserted operation of a profit-making business, since the "not operated for profit" language of § 501(c) (4) does not appear in § 501(c) (3). Rather, it is argued that the totality of the circumstances herein indicate that "more than an insubstantial part of its activities is not in furtherance of an exempt purpose." Regulations § 1.501(c) (3)–1.

The government asserts that the primary, or at least a substantial, goal of plaintiff corporation is to encourage the general public to patronize those businesses which participate in plaintiff's validation stamp system. This, it is said, constitutes a direct private benefit to certain individuals, with only an incidental benefit to the public.

The tenor of the government's argument is that each of the claimed grounds for exemption must be considered separately from the other. The Court, as regards the "charitable organization" ground of § 501(c) (3), is asked to consider whether the stamp validation system and the circumstances surrounding plaintiff's operation indicate a substantial non-exempt purpose. Insofar as the "social welfare organization" exemption under § 501(c) (4) is concerned, the government contends that plaintiff's operation of a commercial enterprise, i. e., a fee-charging parking facility, constitutes a *per se* bar to exemption.

The Court finds that the distinction between the two subsections of § 501 is more apparent than real. It is true that applicable regulations seem to allow the carrying on of a business for profit by a (c) (3) organization, while barring such operations for (c) (4) organizations. The Regulations are, of course, given considerable weight by the Courts. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939). But the Regulations must be seen in light of applicable case law, which, in this area at least, has concentrated more on the philosophy behind § 501 as a whole, rather than on variations in the language employed in each subsection thereof.[1] See, e. g., American Institute of Interior Designers v. United States, 208 F.Supp. 201 (N.D.Cal. Aug. 6, 1962).

■ Thus, if this Court were convinced that plaintiff's organizers, by giving themselves special advertising rights, or by restricting the validation stamp system to certain businesses, were in fact primarily interested in their own ends rather than in those of the public, exemption under *neither* (c) (4) nor (c) (3) would be possible. Similarly, the operation of a commercial enterprise not in furtherance of an exempt purpose would bar consideration under both subsections.[2] In short, the Regulations aim at discovering whether asserted civic or charitable ends are but subterfuges for what is fundamentally a private enterprise. If they are not, the case law under both subsections has made it clear that they will not destroy the exemption claimed. Debs Memorial Radio Fund v. C.I.R., 148 F.2d 948 (2 Cir. 1945) ;[3] Passaic United Hebrew Burial Association v. United States, 216 F.Supp. 500 (D.C. 1963); People's Educational Camp Society, Inc. v. C.I.R., 331 F.2d 923 (2 Cir. 1964); Squire v. Students Book Corp., *cit. supra,* note 1.

---

1. Hence the relaxation of the apparent requirement in both (c) (3) and (c) (4) that the organization claiming exemption be operated "exclusively" for the exempt purpose. "Exclusively" has come to mean "primarily" in (c) (4) cases, and such is recognized by Regulation § 1.-501(c) (4)–1. Similarly, case law seems to tolerate incidental non-exempt purposes for (c) (3) organizations, so long as such non-exempt purposes are not more than an "insubstantial" part of their activities. American Institute for Economic Research v. United States, 157 Ct.Cl. 548, 302 F. 2d 934 (1962); Stevens Bros. Foundation v. C.I.R., 324 F.2d 633 (8 Cir. 1963); Squire v. Students Book Corp., 191 F.2d 1018 (9 Cir. 1951).

2. Thus Regulation § 1.501(c) (3)'s apparent tolerance of commercial enterprise by a "charitable" organization is subject to the proviso not only that all profits be channeled into charitable endeavors but also that the enterprise itself be related to the charitable purpose of the group, i. e. is not an unrelated business under 26 U.S.C. § 513, or a feeder organization under 26 U.S.C. § 502.

3. "The rule of liberal construction applied in those cases in favor of exemption under section 101(6) [the predecessor of § 501(c) (3)] should for similar reasons be applied in favor of social welfare organizations under section 101(8)." *Id.* at 951.

This Court cannot say that plaintiff corporation, organizationally or operationally, subserves, in any substantial way, private interests. There is no question that all but one of plaintiff's organizers were businessmen whose establishments would tend to suffer if the traffic problems of downtown Monterey were not soon resolved. Customers, finding themselves unable to find convenient parking, would avoid the center city in favor of suburban shopping centers. But this was a threat not only to plaintiffs, but to all the City of Monterey, and the deliberations of the City Council so state. See, for example, Exhibit D, Agreed Statement of Facts.

The City of Monterey, therefore, was the primary beneficiary when plaintiff succeeded in constructing public parking facilities without any significant outlay of public funds. See Exhibit DD of Agreed Statements of Facts. The provision of public parking can clearly be regarded as a burden of local government, and when this is accomplished by private individuals, this burden is lessened within the meaning of Regulation § 1.501(c) (3)–1. It also results in the promotion of social welfare within the intendment of Regulation § 1.501(c) (4)–1.[4]

■ Plaintiff's organizers were also undeniably benefitted. But this benefit is indistinguishable from that which inhered to the community as a whole. Their profits may have been enhanced or maintained as customers continued to shop in the downtown area, but this observation applies equally to the profits of *all* downtown businessmen, to the property values of *all* property owners there, and to the value of the tax base of the entire City of Monterey. The validation stamp system is available to *all* persons and businesses, not just to the organizers. No profits, direct or indirect, and no advertising advantages have accrued to plaintiff's organizers which have not also accrued to non-organizers. The Court therefore finds that the benefits to plaintiff's organizers do not constitute a substantial non-exempt purpose under either of the subsections of § 501 invoked herein.

■ Nor under either subsection is the simple conduct of a business fatal to exemption. What is crucial is the *manner* of such conduct. If dividends are paid to the members or shareholders of the organization, the Courts will ignore protestations of charitable intent. Consumer-Farmer Milk Coop. v. C.I.R., 186 F.2d 68 (2 Cir. 1950); Birmingham Business College, Inc. v. C.I.R., 276 F.2d 476 (5 Cir. 1960). Or if there is substantial possibility that upon dissolution, accumulated assets will find their way into private hands, exemption is barred. Regulations § 1.501(c) (3)–1(b) (4). Likewise unqualified for exemption under either subsection are corporations which carry on commercial enterprises which are unrelated to their charitable purposes; the fact that profits therefrom are later fed into an exempt organization is not relevant. 26 U.S.C. § 502; United States v. Community Services, Inc., 189 F.2d 421 (4 Cir. 1951). Further examples of the kind of conduct which is deemed to run counter to the general philosophy of the § 501 exemption include the unreasonable accumulation of income or surpluses (People's Educational Camp, etc., *cit. supra*); and the restriction of corporate services and benefits to members of the exempt group. American Women Buyers Club, Inc. v. United States, 235 F.Supp. 668 (D.C. 1963); C.I.R. v. Lake Forest, Inc., 305 F.2d 814 (C.A. 4, 1962).

Plaintiff's manner of operation is not such as to run afoul of any of the above specific examples of conduct deemed to be for private gain rather than public good. Plaintiff, by its articles of in-

---

4. This regulation also makes it clear that the exemptions of subsections (3) and (4) overlap, and that a social welfare or-

ganization under (4) can also qualify as a charitable organization under (3).

corporation and by-laws, restricted itself to aiding and assisting the City of Monterey in establishing and operating public parking facilities. Exhibits A and B, Agreed Statement of Facts. All future profits have been given over to, and accepted by, the City and are to be used for further such facilities. Agreed Statement of Facts, #31, 36. See also Willingham v. Home Oil Mill, 181 F.2d 9 (5 Cir. 1950). Upon dissolution, "remaining assets shall be distributed to a nonprofit fund, foundation [etc.] organized and operated exclusively for charitable, educational, religious, and/or scientific purposes and which has established its tax-exempt status under Section 501 (c) (3) of the Internal Revenue Code". Article 7, Exhibit A, Agreed Statement of Facts. There is no indication of unreasonably accumulated surpluses, and, as noted above, there are no special benefits accruing to plaintiff's organizers which do not also accrue to the community as a whole.

In short, the preponderance of the evidence is that not only are plaintiff's tangible assets and profits devoted to exempt purposes, but also that the business itself "obviously bears a close and intimate relationship" to those purposes. Squire v. Students Book Corp., *cit. supra* note 1. Plaintiff has none of the indicia by which Courts have exposed bad faith attempts to take advantage of § 501: no dividends for private persons, no under the table distributions of assets, no advertising advantages or special prices for a privileged few. The business activity itself is similar to that which others engage in for private profit, but it is not carried on in the same manner; it is carried on only because it is necessary for the attainment of an undeniably public end.

Accordingly, the Court finds that plaintiff qualifies for exemption from federal income taxes both as a charitable corporation under § 501(c) (3) and as a social welfare organization under § 501 (c) (4) of the Internal Revenue Code, 26 U.S.C.

The foregoing shall constitute findings of fact and conclusions of law under rule 52(a) of the Federal Rules of Civil Procedure. Plaintiff shall prepare forms of judgment in conformity herewith.